PEOPLE v BRANTLEY

Docket No. 298488. Submitted March 14, 2012, at Detroit. Decided May 17, 2012, at 9:00 a.m. Amended, 296 Mich App 801. Leave to appeal denied, 493 Mich 877.

Hawk H. Brantley was convicted by a jury in the Oakland Circuit Court of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(e), and larceny from the person, MCL 750.357, for raping a former girlfriend at knifepoint and taking her personal property. The court, Shalina D. Kumar, J., sentenced defendant to serve concurrent prison terms of 4 to 10 years for the larceny conviction and 12 to 40 years for the CSC-I conviction, as well as lifetime electronic monitoring pursuant to MCL 750.520n following his release. Defendant appealed.

The Court of Appeals *held*:

1. The prosecution presented sufficient evidence to prove defendant's guilt beyond a reasonable doubt. With respect to the CSC-I charge, defendant was convicted of engaging in sexual penetration with another person while armed with a weapon or any article used or fashioned in a manner to lead the victim to reasonably believe it to be a weapon. Sexual penetration includes any intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of another person's body. The complainant's testimony can, by itself, be sufficient to support a conviction of CSC-I. In this case, the victim testified that defendant put his forearm on her throat with enough pressure that she could not breathe, produced a black folding knife and put the edge of it on her throat, pulled her pants down around her knees, and flipped her onto her stomach and inserted his penis into her vagina from behind. The victim had a scratch on her neck that was consistent with her allegation that defendant held a knife to her neck. In addition, the victim identified defendant as her attacker, defendant could not be excluded as a possible source of the semen that was collected, and defendant was arrested with a black folding knife in his possession. Taken as a whole, this evidence was sufficient to allow a rational trier of fact to conclude beyond a reasonable doubt that defendant engaged in sexual penetration with the victim while he was armed with a weapon. Defendant was also convicted of larceny from the person, which

requires the prosecution to prove that the defendant took someone else's property without consent, moved the property, intended to steal or permanently deprive the owner of the property, and took the property from the person or from the person's immediate area of control or immediate presence. The victim testified that defendant took her cell phone, money, and purse without her permission while she and defendant were together in his car. Furthermore, the victim's cousin testified that defendant had the victim's cell phone after the assault, told the victim's cousin not to call the phone again, and then used the phone to call the victim's cousin back. Finally, the evidence indicated that the victim was missing her cell phone after the assault. This evidence was sufficient to allow the jury to conclude beyond a reasonable doubt that defendant committed all the essential elements of larceny from the person.

2. The jury's verdicts were not against the great weight of the evidence. A new trial based on a challenge to the weight of the evidence should be granted only when the evidence preponderates heavily against the verdict and a serious miscarriage of justice would otherwise result. In general, conflicting testimony or questions concerning the credibility of the witnesses are not sufficient grounds for a new trial. The evidence presented at trial did not preponderate heavily against the jury's CSC-I verdict. In addition to her identification of defendant, the evidence of the scratch, and the testimony concerning the source of the semen, the victim relayed consistent versions of the assault to her sister, the emergency room doctor, and the forensic nurse who examined her. Although there was no acute injury to the victim's vagina, the forensic nurse testified that this was not unusual for a victim of sexual assault. The aspects of the victim's testimony that defendant argued cast doubt on her credibility did not make her story so unreliable that a reasonable jury could not have believed it. The evidence presented at trial concerning the victim's property also did not preponderate heavily against the jury's verdict regarding larceny from a person.

3. The trial court erroneously assessed 10 points for offense variable (OV) 10 (exploitation of victim) when imposing the sentence for the CSC-I conviction. Under MCL 777.40 a trial court may assess 10 points for OV 10 if the offender exploited a victim's physical disability, mental disability, youth or agedness, or a domestic relationship, or if the offender abused his or her authority status. In the context of OV 10, a domestic relationship is a familial or cohabitating relationship, not merely a past dating relationship. In this case, the trial court incorrectly

found that defendant and the victim were involved in a domestic relationship because they had stopped dating at least two months before the assault, they were dating other people, they did not continue to have sex, and they did not live together. Because the trial court imposed a minimum sentence that was based on an erroneous interpretation of OV 10 and fell outside the appropriate minimum sentence range under the sentencing guidelines, defendant's CSC-I sentence had to be vacated and the case remanded for resentencing.

4. The trial court did not err by ordering defendant to submit to lifetime electronic monitoring following his release from prison despite the fact that the victim was 21 years old when defendant sexually assaulted her. MCL 750.520b(2)(d) provides that in addition to any other penalty imposed, the court must sentence a defendant convicted of CSC-I to lifetime electronic monitoring under MCL 750.520n, which in turn provides that a "person convicted under [MCL 750.520b] or [MCL 750.520c] for criminal sexual conduct committed by an individual 17 years old or older against an individual less than 13 years of age" must be sentenced to lifetime electronic monitoring. Applying the last-antecedent rule indicated that the Legislature intended the modifying phrase "for criminal sexual conduct committed by an individual 17 years old or older against an individual less than 13 years of age" to apply to convictions of second-degree criminal sexual conduct (CSC-II) under MCL 750.520c only, and not to convictions of CSC-I under MCL 750.520b. Further, because MCL 750.520b(2)(d), MCL 750.520c(2)(b), and MCL 750.520n(1) address the same subject and share a common purpose, they are *in pari materia* and must be read together as a unified whole. While MCL 750.520b(2)(d) is silent regarding age, MCL 750.520c(2)(b) states with respect to individuals convicted of CSC-II that the court must sentence the defendant to lifetime electronic monitoring if the violation involved sexual contact committed by an individual 17 years of age or older against an individual less than 13 years of age. Accordingly, MCL 750.520n(1) requires a trial court to impose lifetime electronic monitoring when any defendant is convicted of CSC-I under MCL 750.520b and when a defendant who is 17 years old or older is convicted of CSC-II under MCL 750.520c against a victim who is less than 13 years old.

Convictions affirmed; sentence for CSC-I vacated and case remanded for correction of the sentencing information report and resentencing.

K. F. KELLY, J., concurring in part and dissenting in part, agreed with the majority except with respect to its affirmation of the

imposition of lifetime electronic monitoring. She would have vacated that portion of the judgment of sentence and held that the plain language of MCL 750.520b(2)(d) and MCL 750.520n requires the imposition of lifetime electronic monitoring only when the victim is less than 13 years old and the defendant is 17 years old or older, even if the defendant was convicted of CSC-I.

1. CRIMINAL LAW — CRIMINAL SEXUAL CONDUCT — SENTENCES — LIFETIME ELECTRONIC MONITORING.

   MCL 750.520n(1) requires a trial court to impose lifetime electronic monitoring when a defendant is convicted of first-degree criminal sexual conduct under MCL 750.520b and when a defendant who was 17 years old or older is convicted of second-degree criminal sexual conduct under MCL 750.520c if the victim was less than 13 years old.

2. CRIMINAL LAW — SENTENCES — OFFENSE VARIABLE 10 — EXPLOITATION OF A DOMESTIC RELATIONSHIP.

   A trial court may assess 10 points for offense variable 10 (exploitation of victim) if the offender exploited a victim's physical disability, mental disability, youth or agedness, or a domestic relationship, or if the offender abused his or her authority status; in the context of offense variable 10, a domestic relationship is a familial or cohabitating relationship, not merely a past dating relationship (MCL 777.40[1][b]).

*Bill Schuette*, Attorney General, *John J. Bursch*, Solicitor General, *Jessica R. Cooper*, Prosecuting Attorney, *Thomas R. Grden*, Chief, Appellate Division, and *Rae Ann Ruddy*, Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Marla R. McCowan*) for defendant.

Before: WHITBECK, P.J., and JANSEN and K. F. KELLY, JJ.

JANSEN, J. Defendant appeals by right his jury-trial convictions of first-degree criminal sexual conduct

(CSC-I), MCL 750.520b(1)(e) (armed with a weapon), and larceny from the person, MCL 750.357. He was sentenced to serve concurrent prison terms of 12 to 40 years for the CSC-I conviction and 4 to 10 years for the larceny-from-the-person conviction. He was also ordered to submit to lifetime electronic monitoring following his release from prison. We affirm defendant's convictions, but vacate his sentences in part and remand for resentencing consistent with this opinion.

I

Defendant first argues that the prosecution failed to present sufficient evidence to prove beyond a reasonable doubt that he committed the crimes. We disagree.

Claims of insufficient evidence in a criminal case are reviewed de novo, with the evidence viewed in a light most favorable to the prosecution. *People v Ericksen*, 288 Mich App 192, 195-196; 793 NW2d 120 (2010). We must determine whether a rational trier of fact could have found that all the essential elements of the offenses were proved beyond a reasonable doubt. *People v Railer*, 288 Mich App 213, 217; 792 NW2d 776 (2010). Circumstantial evidence and reasonable inferences arising therefrom may be used to prove the elements of a crime. *People v Bennett*, 290 Mich App 465, 472; 802 NW2d 627 (2010). "[T]his Court must not interfere with the jury's role as the sole judge of the facts." *People v Meshell*, 265 Mich App 616, 619; 696 NW2d 754 (2005). It is the role of the jury to " 'determine questions of fact and assess the credibility of witnesses.' " *People v Cameron*, 291 Mich App 599, 616; 806 NW2d 371 (2011), quoting *People v Lemmon*, 456 Mich 625, 637; 576 NW2d 129 (1998).

Defendant was convicted under MCL 750.520b(1)(e), which provides that "[a] person is guilty of criminal

sexual conduct in the first degree if he or she engages in sexual penetration with another person" and "is armed with a weapon or any article used or fashioned in a manner to lead the victim to reasonably believe it to be a weapon." "Sexual penetration" is defined, in relevant part, as "any . . . intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of another person's body . . . ." MCL 750.520a(r); see also *People v Szalma*, 487 Mich 708, 712 n 5; 790 NW2d 662 (2010). "[T]he complainant's testimony can, by itself, be sufficient to support a conviction" of criminal sexual conduct. *Id.* at 724; see also MCL 750.520h.

Defendant was also convicted under MCL 750.357, which provides in pertinent part that "[a]ny person who shall commit the offense of larceny by stealing from the person of another shall be guilty of a felony . . . ." As this Court observed in *People v Perkins*, 262 Mich App 267, 271-272; 686 NW2d 237 (2004), to prove the elements of larceny from a person, the prosecution must show that the defendant (1) took someone else's property without consent, (2) moved the property, (3) intended to steal or permanently deprive the owner of the property, and (4) took the property from the person or from the person's immediate area of control or immediate presence.

We first conclude that the prosecution presented sufficient evidence to prove beyond a reasonable doubt that defendant committed CSC-I under MCL 750.520b(1)(e). The victim testified that defendant put his forearm on her throat with enough pressure that she could not breathe, that defendant produced a black folding knife and put the edge of the knife on her throat, that defendant pulled her pants down around her knees, and that defendant flipped her over onto her

stomach and inserted his penis into her vagina from behind. The victim had a scratch on her neck that was consistent with her allegation that defendant held a knife to her neck. In addition, the victim identified defendant as her attacker, and defendant could not be excluded as a possible source of the semen that was collected. Lastly, defendant was arrested with a black folding knife in his possession. Taken as a whole, this evidence was sufficient to allow a rational trier of fact to conclude beyond a reasonable doubt that defendant engaged in sexual penetration with the victim while he was armed with a weapon. See MCL 750.520b(1)(e).

We also conclude that the prosecution presented sufficient evidence to prove beyond a reasonable doubt that defendant committed the offense of larceny from the person. The victim testified that defendant took her cell phone, money, and purse without her permission while they were in his car. Furthermore, the victim's cousin testified that defendant had the victim's cell phone after the assault, that defendant told the victim's cousin not to call the cell phone again, and that defendant then used the cell phone to call the victim's cousin back. Finally, the evidence indicated that the victim was missing her cell phone after the assault. This evidence was sufficient to enable a rational trier of fact to conclude beyond a reasonable doubt that defendant had committed all the essential elements of the offense of larceny from the person. See *Perkins*, 262 Mich App at 271-272.

II

Defendant also argues that the jury's verdicts were against the great weight of the evidence. Again, we disagree.

We review unpreserved claims that the verdict was against the great weight of the evidence for plain error affecting the defendant's substantial rights. *People v Musser*, 259 Mich App 215, 218; 673 NW2d 800 (2003). " '[A] new trial based upon the weight of the evidence should be granted only where the evidence preponderates heavily against the verdict and a serious miscarriage of justice would otherwise result.' " *Lemmon*, 456 Mich at 642 (citation omitted). In general, conflicting testimony or questions concerning the credibility of the witnesses are not sufficient grounds for granting a new trial. *Id.* at 643.

The evidence presented at trial did not preponderate heavily against the jury's CSC-I verdict. The victim testified regarding the sexual assault. She relayed consistent versions of the assault to her sister, the emergency room doctor, and the forensic nurse who examined her. The victim also identified defendant as her attacker. She had a scratch on her neck that was consistent with her allegation that defendant held a knife to her neck. When she spoke to her sister and the forensic nurse, she was shaken and upset. Although there was no acute injury to the victim's vagina, the forensic nurse testified that this was not unusual for a victim of sexual assault. Moreover, defendant could not be excluded as a possible source of the semen. Defendant was arrested with a black folding knife that matched the weapon used during the assault. Furthermore, the facts that the victim could not judge how far defendant had parked his car from a school security guard and that the victim may have lied about a previous consensual encounter did not make her story so unreliable that a reasonable jury could not have believed it.

Similarly, the evidence presented at trial did not preponderate heavily against the jury's larceny-from-the-person verdict. The victim testified that defendant took

her cell phone, money, and purse. This testimony was supported by evidence that the victim had to use a school security guard's cell phone to call her sister. Moreover, the victim's cousin testified that defendant had the victim's cell phone after the assault. The jury's verdicts were not against the great weight of the evidence.

III

Defendant next argues that the trial court erroneously assessed 10 points for offense variable (OV) 10, MCL 777.40, when sentencing him for the CSC-I conviction. We agree and remand for resentencing with respect to the CSC-I conviction.

We review a trial court's scoring decisions under the sentencing guidelines to determine whether the court properly exercised its discretion and whether the record adequately supports a particular score. *People v Steele*, 283 Mich App 472, 490; 769 NW2d 256 (2009). "An appellate court must affirm minimum sentences that are within the recommended guidelines range, except when there is an error in scoring the sentencing guidelines or inaccurate information was relied on in determining the sentence." *Id.*; see also MCL 769.34(10).

Pursuant to MCL 777.40(1)(b), a trial court may assess 10 points for OV 10 if "[t]he offender exploited a victim's physical disability, mental disability, youth or agedness, or a domestic relationship, or the offender abused his or her authority status[.]" In the context of OV 10, this Court has recently defined a "domestic relationship" as "a familial or cohabitating relationship . . . ." *People v Jamison*, 292 Mich App 440, 447; 807 NW2d 427 (2011). This Court specifically rejected the proposition that a past dating relationship would fall within the definition of a "domestic relationship" under MCL 777.40(1)(b). *Id.* at 447-448.

Given this Court's decision in *Jamison*, we conclude that the trial court erroneously assessed 10 points for OV 10. Defendant and the victim had stopped dating at least two months prior to the assault. Although they remained friends, both were dating other people, they did not continue to have sex, and they did not live together. Indeed, the victim and defendant had limited contact. Although defendant took the victim to school and they occasionally talked on the phone, this did not constitute a domestic relationship for the purpose of scoring OV 10. The trial court incorrectly found that defendant and the victim were involved in a domestic relationship.

If the trial court had properly assessed zero points rather than 10 points for OV 10, defendant's total offense variable score would have been 35 points instead of 45 points. This would have placed defendant in cell D-II, rather than cell D-III, on the sentencing grid for class A felony offenses. MCL 777.62. The recommended minimum sentence range for offenders falling in cell D-II on the class A felony grid is 81 to 135 months in prison. *Id*. However, the trial court imposed a minimum sentence of 144 months in prison in this case. This minimum sentence fell outside defendant's correct guidelines range of 81 to 135 months. Because defendant's minimum sentence was based on an erroneous interpretation of OV 10 and fell outside the appropriate guidelines range, we vacate the sentence imposed for defendant's CSC-I conviction and remand for resentencing. *People v Francisco*, 474 Mich 82, 91-92; 711 NW2d 44 (2006).

IV

Defendant also argues that the trial court erred by ordering him to submit to lifetime electronic monitoring following his release from prison. We disagree.

"Whether defendant is subject to the statutory requirement of lifetime electronic monitoring involves statutory construction, which is reviewed de novo." *People v Kern*, 288 Mich App 513, 516; 794 NW2d 362 (2010).

With respect to an individual convicted of CSC-I, MCL 750.520b(2)(d) provides in pertinent part that "[i]n addition to any other penalty imposed . . . , the court shall sentence the defendant to lifetime electronic monitoring under section 520n." In turn, MCL 750.520n(1) provides that "[a] person convicted under section 520b or 520c for criminal sexual conduct committed by an individual 17 years old or older against an individual less than 13 years of age shall be sentenced to lifetime electronic monitoring . . . ."

Defendant contends that, pursuant to MCL 750.520b(2)(d) and MCL 750.520n(1), a trial court must order a defendant who is convicted of CSC-I to submit to lifetime electronic monitoring *only* if the defendant was 17 years old or older and the victim was less than 13 years old. Because the victim in this case was 21 years old when defendant sexually assaulted her, defendant asserts that he should not have been subjected to lifetime electronic monitoring. Defendant's argument is compelling. Indeed, as the dissent points out, several panels of this Court have agreed with that interpretation and held that lifetime electronic monitoring is required for a CSC-I conviction *only* if the defendant was 17 years old or older and the victim was less than 13 years old. See *People v Floyd*, unpublished opinion per curiam of the Court of Appeals, issued September 20, 2011 (Docket No. 297393); *People v Quintana*, unpublished opinion per curiam of the Court of Appeals, issued May 19, 2011 (Docket No. 295324); *People v Hampton*, unpublished opinion per curiam of the Court

of Appeals, issued December 20, 2011 (Docket No. 297224); *People v Bowman*, unpublished opinion per curiam of the Court of Appeals, issued November 9, 2010 (Docket No. 292415). However, those decisions are unpublished and nonbinding, and although we are fully cognizant of the rule of interpretation requiring adherence to the plain language of a statute, we refuse to look at the language in a vacuum and ignore other clearly relevant statutory rules of construction.

Taken alone, the language of MCL 750.520n(1) does seem to indicate that a trial court must order a defendant who is convicted of CSC-I to submit to lifetime electronic monitoring *only* if the defendant was 17 years old or older and the victim was less than 13 years old. However, having examined this provision in context and compared it to MCL 750.520c, we conclude that the Legislature intended the modifying phrase "for criminal sexual conduct committed by an individual 17 years old or older against an individual less than 13 years of age" to apply to convictions of second-degree criminal sexual conduct (CSC-II) under MCL 750.520c *only*, and *not* to convictions of CSC-I under MCL 750.520b. Under the "last antecedent" rule, a modifying or restrictive word or clause contained in a statute is confined solely to the immediately preceding clause or last antecedent unless something in the statute requires a different interpretation. *Duffy v Dep't of Natural Resources*, 490 Mich 198, 220-221; 805 NW2d 399 (2011); see also *People v Henderson*, 282 Mich App 307, 328; 765 NW2d 619 (2009). Within the text of MCL 750.520n(1), the last antecedent preceding the modifying phrase "for criminal sexual conduct committed by an individual 17 years old or older against an individual less than 13 years of age" is "[§] 520c," indicating that the Legislature intended the phrase to modify "[§] 520c" only.

This reading of MCL 750.520n(1) is further supported by the language of MCL 750.520b(2)(d) and MCL 750.520c(2)(b). Because MCL 750.520b(2)(d), MCL 750.520c(2)(b), and MCL 750.520n(1) address the same subject and share a common purpose, they are *in pari materia* and must be read together as a unified whole. *Kern*, 288 Mich App at 517. As explained previously, MCL 750.520b(2)(d) states, with respect to individuals convicted of CSC-I, that "[i]n addition to any other penalty imposed . . . the court shall sentence the defendant to lifetime electronic monitoring under section 520n." MCL 750.520b(2)(d) is notably silent regarding the age of the defendant or the age of the victim. In contrast, MCL 750.520c(2)(b) states, with respect to individuals convicted of CSC-II, that "[i]n addition to the penalty specified in [MCL 750.520c(2)(a)], the court shall sentence the defendant to lifetime electronic monitoring under section 520n *if the violation involved sexual contact committed by an individual 17 years of age or older against an individual less than 13 years of age.*" (Emphasis added.) Thus, while the CSC-II statute specifically limits the requirement of lifetime electronic monitoring to defendants who are 17 years old or older and whose victims are younger than 13 years old, the CSC-I statute contains no such age-based limitation. If the Legislature had intended the age-based limitation to apply to CSC-I convictions, it would have so provided, given that, as MCL 750.520c(2)(b) demonstrates, it clearly was aware of how to draft the statute in a way that would have effectuated that intent. And the omission in one part of a statute of a provision that is included in another part should be construed as intentional. *People v Monaco*, 474 Mich 48, 58; 710 NW2d 46 (2006). Accordingly, we read MCL 750.520n(1) as requiring the trial court to impose lifetime electronic monitoring in either of two different circumstances: (1)

when any defendant is convicted of CSC-I under MCL 750.520b, and (2) when a defendant who is 17 years old or older is convicted of CSC-II under MCL 750.520c against a victim who is less than 13 years old. In other words, we hold that any defendant convicted of CSC-I under MCL 750.520b, regardless of the age of the defendant or the age of the victim, must be ordered to submit to lifetime electronic monitoring. MCL 750.520b(2)(d); MCL 750.520n(1). In sum, the trial court did not err by imposing the requirement of lifetime electronic monitoring on the basis of defendant's CSC-I conviction.[1]

V

We affirm defendant's convictions. We also affirm the trial court's imposition of lifetime electronic monitoring on the basis of defendant's CSC-I conviction.

We vacate defendant's sentence of 12 to 40 years in prison and remand for resentencing with respect to defendant's CSC-I conviction. The trial court shall modify the sentencing information report to indicate defendant's correct minimum sentence range under the guidelines and shall enter an amended judgment of sentence after resentencing.

Affirmed in part, vacated in part, and remanded for resentencing consistent with this opinion. We do not retain jurisdiction.

WHITBECK, P.J., concurred with JANSEN, J.

---

[1] In light of our conclusion in this regard, we reject defendant's argument that his attorney rendered ineffective assistance of counsel by failing to object to the trial court's imposition of lifetime electronic monitoring. It is well settled that counsel is not ineffective for failing to advocate a meritless position or make a futile objection. *People v Goodin*, 257 Mich App 425, 433; 668 NW2d 392 (2003); *People v Snider*, 239 Mich App 393, 425; 608 NW2d 502 (2000).

K. F. KELLY, J. (*concurring in part and dissenting in part*). I agree with the majority that defendant's convictions for first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(e) (armed with a weapon), and larceny from the person, MCL 750.357, must be affirmed. I also agree with the majority that the case must be remanded for resentencing because the sentencing court erred by assessing 10 points for offense variable (OV) 10, MCL 777.40, when there was no evidence that defendant and the victim were involved in a domestic relationship. However, I write separately to dissent from that portion of the majority's opinion affirming the sentencing court's imposition of lifetime electronic monitoring. Because the plain language of MCL 750.520n(1) clearly applies only when the victim is less than 13 years of age and the defendant is 17 years old or older, I would vacate the imposition of lifetime electronic monitoring.

### I. STANDARD OF REVIEW

"Whether defendant is subject to the statutory requirement of lifetime electronic monitoring involves statutory construction, which is reviewed de novo." *People v Kern*, 288 Mich App 513, 516; 794 NW2d 362 (2010).

> The primary goal of statutory construction is to give effect to the Legislature's intent. The statute's words are the most reliable indicator of the Legislature's intent and should be interpreted based on their ordinary meaning and the context within which they are used in the statute. An unambiguous statute is enforced as written. It is only when statutory language is ambiguous that a court may look outside the statute to ascertain legislative intent. A statutory provision is ambiguous if it irreconcilably conflicts with another provision or is equally susceptible to more than one meaning. [*Id.* at 516-517 (quotation marks, brackets, and citations omitted).]

## II. ANALYSIS

Defendant argues that the plain language of MCL 750.520n does not require lifetime electronic monitoring when the sexual assault victim is an adult. I agree. When MCL 750.520b(2)(d) is read with MCL 750.520n, the clear result is that lifetime electronic monitoring is only required when the victim is less than 13 years old and the defendant is 17 years of age or older.

MCL 750.520b(2) provides:

> Criminal sexual conduct in the first degree is a felony punishable as follows:
>
> (a) Except as provided in subdivisions (b) and (c), by imprisonment for life or for any term of years.
>
> (b) For a violation that is committed by an individual 17 years of age or older against an individual less than 13 years of age by imprisonment for life or any term of years, but not less than 25 years.
>
> (c) For a violation that is committed by an individual 17 years of age or older against an individual less than 13 years of age, by imprisonment for life without the possibility of parole if the person was previously convicted of a violation of this section or [MCL 750.520c, MCL 750.520d, MCL 750.520e, or MCL 750.520g] committed against an individual less than 13 years of age or a violation of law of the United States, another state or political subdivision substantially corresponding to a violation of this section or [MCL 750.520c, MCL 750.520d, MCL 750.520e, or MCL 750.520g] committed against an individual less than 13 years of age.
>
> (d) In addition to any other penalty imposed under subdivision (a) or (b), the court shall sentence the defendant to lifetime electronic monitoring under [MCL 750.520n].

MCL 750.520n(1) provides:

> A person convicted under [MCL 750.520b or MCL 750.520c] for criminal sexual conduct committed by an

individual 17 years old or older against an individual less than 13 years of age shall be sentenced to lifetime electronic monitoring . . . .

The majority concludes that MCL 750.520n(1)

requir[es] the trial court to impose lifetime electronic monitoring in either of two different circumstances: (1) when any defendant is convicted of CSC-I under MCL 750.520b, and (2) when a defendant who is 17 years old or older is convicted of [second-degree criminal sexual conduct (CSC-II)] under MCL 750.520c against a victim who is less than 13 years old.

The majority comes to this conclusion by comparing the language of MCL 750.520b and MCL 750.520c (CSC-II). MCL 750.520c(2) provides:

Criminal sexual conduct in the second degree is a felony punishable as follows:

(a) By imprisonment for not more than 15 years.

(b) In addition to the penalty specified in subdivision (a), the court shall sentence the defendant to lifetime electronic monitoring under [MCL 750.520n] if the violation involved sexual contact committed by an individual 17 years of age or older against an individual less than 13 years of age.

The majority holds that "while the CSC-II statute specifically limits the requirement of lifetime electronic monitoring to defendants who are 17 years old or older and whose victims are younger than 13 years old, the CSC-I statute contains no such age-based limitation." On this basis, the majority concludes that "any defendant convicted of CSC-I under MCL 750.520b, regardless of the age of the defendant or the age of the victim, must be ordered to submit to lifetime electronic monitoring."

In reaching its conclusion, I believe that the majority rewrites the legislation to say something that it does

not. The majority would reform the statute to say what the majority believes it ought to say rather than what the Legislature has clearly and unequivocally stated. That is beyond our province as an appellate court.

In *Kern*, this Court was asked to determine whether lifetime electronic monitoring for defendants convicted of CSC-II applied only to persons who had been released on parole or from prison. *Kern*, 288 Mich App at 514-515. *Kern* does not answer the question whether MCL 750.520n(1) only requires lifetime electronic monitoring for CSC-I when the victim is less than 13 years old, but *Kern* does buttress my belief that the majority has overstepped its bounds in looking beyond the clear language of the statute. The result in *Kern* depended on the interplay between the Michigan Penal Code, MCL 750.1 *et seq.*, and the Corrections Code, MCL 791.201 *et seq. Kern*, 288 Mich App at 517-518. We concluded that lifetime electronic monitoring "applies only to persons who have been released on parole or from prison, or both, and, therefore, does not apply to defendant, who was sentenced to five years' probation, with 365 days to be served in jail." *Id.* at 519. Reading the two codes *in pari materia,* we noted:

> MCL 750.520n(1) of the Michigan Penal Code directs that defendants shall be sentenced to lifetime electronic monitoring as provided under MCL 791.285 of the Corrections Code. Because the latter statute only provides for the implementation of a lifetime electronic monitoring program for those defendants who are released on parole or from prison, or both, defendants given probation or sent to jail are not subject to such monitoring. [*Id.* at 522-523.]

We acknowledged that

> the Legislature used the terms "parole" and "prison" and did not use the terms "probation" or "jail." A court may not engraft on a statutory provision a term that the Legislature

might have added to a statute but did not. The Legislature's distinction between "parole" and "probation," and "prison" and "jail," must be respected. [*Id.* at 522 (citation omitted).]

This deference to the Legislature must prevail:

The prosecution persuasively argues that persons convicted of [CSC-II] for conduct committed by an individual 17 years of age or older against an individual less than 13 years old and sentenced to probation or jail time present a similar, if not the same, risk to the public as those sentenced to time in prison and, therefore, should be subject to lifetime electronic monitoring. But "arguments that a statute is unwise or results in bad policy should be addressed to the Legislature." *People v Kirby*, 440 Mich 485, 493-494; 487 NW2d 404 (1992). Whether the Legislature's actions are due to concerns about taxing county resources, a strategic decision that crimes resulting in sentences to jail or probation do not merit the time and expense involved with lifetime electronic monitoring in addition to maintaining the defendant's listing on the Michigan public sex offender registry, or a mere drafting oversight is not for us to decide. While the Legislature may deem it necessary to make changes to the statutory scheme to provide for the monitoring of persons sentenced to probation or jail time, such changes are not within the province of the judicial branch. Because this is a particularly important matter of public interest, we urge the Legislature to review whether it was indeed the intent of that body to exclude from lifetime electronic monitoring individuals convicted of [CSC-II] who are sentenced to probation or jail time. [*Id.* at 524-525.]

Again, while *Kern* may not directly answer the question before us, it certainly guides our statutory interpretation and reminds us that we must defer to the clear unequivocal language used by the Legislature.

While I recognize that unpublished opinions are not precedentially binding under the rules of stare decisis, MCR 7.215(C)(1), there have been several recent un-

published cases concerning lifetime electronic monitoring sentences in which the victim was over the age of 13, and I find their analysis persuasive. In *People v Quintana*, unpublished opinion per curiam of the Court of Appeals, issued May 19, 2011 (Docket No. 295324), p 7, this Court vacated the defendant's lifetime electronic monitoring sentencing condition because the victim was older than 13:

> We conclude that although the legislature may have intended to subject all individuals convicted [of CSC-I] to lifetime electronic monitoring, the legislature's intent is irrelevant to our determination because the statutory language is unambiguous. MCL 750.520b(2)(d) explicitly references MCL 750.520n, which only applies where the victim is younger than 13. For this Court to accept the prosecution's interpretation of MCL 750.520b(2)(d), it would essentially be required to ignore that provision's reference to MCL 750.520n. Stated differently, if the legislature desired to subject all individuals convicted of [CSC-I] to lifetime electronic monitoring, the controlling statute would not have included the language that we emphasize below:
>
> "In addition to any other penalty imposed under subdivision (a) or (b), the court shall sentence the defendant to lifetime electronic monitoring **under section 520n.**"
>
> Under the rules of statutory interpretation, we cannot simply disregard the specific language utilized by the legislature. As a result, the portion of the Judgment of Sentence requiring lifetime electronic monitoring is vacated.

In *People v Bowman*, unpublished opinion per curiam of the Court of Appeals, issued November 9, 2010 (Docket No. 292415), the defendant was convicted of two counts of *first-degree* criminal sexual conduct. We found no support for the sentencing court's imposition of lifetime electronic monitoring when the victim was over the age of 13:

Here, it is undisputed that the complainant was 14 years old at the time of defendant's offenses. The prosecution concedes that the trial court erred in imposing the lifetime tether requirement.[1] Accordingly, we remand to the trial court for it to engage in the ministerial task of removing the lifetime tether provision from defendant's judgment of sentence. [*Id.*, unpub op at 6.]

In *People v Hampton*, unpublished opinion per curiam of the Court of Appeals, issued December 20, 2011 (Docket No. 297224), the defendant was convicted of six counts of *first-degree* criminal sexual conduct. We vacated the lifetime electronic monitoring from the defendant's sentence because the victim was over the age of 13:

The criminal sexual conduct statute instructs that "the court shall sentence the defendant to lifetime electronic monitoring under section 520n." MCL 750.520b(2)(d). Pursuant to MCL 750.520n(1), a "person convicted under section 520b or 520c for criminal sexual conduct committed by an individual 17 years old or older against an individual less than 13 years of age shall be sentenced to lifetime electronic monitoring." The goal of statutory construction is to give effect to the Legislature's intent. The Legislature is presumed to have intended the meaning it plainly expressed and clear statutory language must be enforced as written.

Accordingly, the plain language of the statute as written requires the conclusion that defendant is entitled to have the lifetime electronic monitoring portion of his sentence vacated because the victim in this case was 14 and 15 years old at the time of the offenses. The prosecution's argument that the Legislature intended to provide mandatory lifetime electronic monitoring for all persons convicted of [CSC-I] is not supported by the plain language of the statute. [*Id.*, unpub op at 10 (citations omitted).]

---

[1] I note that the Oakland County Prosecutor's Office has now taken two different positions on this issue. Whereas in *Bowman* the prosecution conceded error in imposing lifetime tethering, it now argues to the contrary on this appeal.

In *People v Floyd*, unpublished opinion per curiam of the Court of Appeals, issued September 20, 2011 (Docket No. 297393), the defendant was convicted of four counts of *first-degree* criminal sexual conduct. We vacated the lifetime electronic monitoring from the defendant's sentence because the victim was over the age of 13:

> Although the prosecution argues that the Legislature intended to provide mandatory lifetime electronic monitoring for all persons convicted of [CSC-I] with MCL 750.520b(2)(d), that interpretation is not supported by a plain reading of the statute. Specifically, MCL 750.520b directs the trial court to MCL 750.520n to determine if lifetime electronic monitoring is mandatory. Under MCL 750.520n, lifetime electronic monitoring is only mandatory when the defendant is 17 years of age or older and the victim is younger than 13 years old. *See People v Kern*, 288 Mich App 513, 519; 794 NW2d 362 (2010) ("Standing alone, the terms of MCL 750.520c and MCL 750.520n indicate that all defendants convicted of second-degree CSC for conduct committed by an individual 17 years of age or older against an individual less than 13 years old are subject to lifetime electronic monitoring, without exception."). The victim here was older than 13 at the time of the assaults, therefore, MCL 750.520n does not apply. Accordingly, we vacate the trial court's judgment to the extent that it ordered defendant to be subject to lifetime electronic monitoring. [*Id.*, unpub op at 6.]

A plain reading of MCL 750.520b(2)(d) and MCL 750.520n(1) provides that, even in the case of CSC-I, lifetime electronic monitoring is only required when the victim is less than 13 years old and the defendant is 17 years old or older.

I would vacate that portion of defendant's sentence mandating lifetime electronic monitoring.