# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
June 20, 2017

Plaintiff-Appellee,

v

No. 330713
Wayne Circuit Court
LC No. 15-005931-01-FC

TERRY TERRELL CLARK,

Defendant-Appellant.

Before: RIORDAN, P.J., and RONAYNE KRAUSE and SWARTZLE, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of assault with a dangerous weapon ("felonious assault"), MCL 750.82, and possession of a firearm during the commission of a felony ("felony-firearm"), MCL 750.227b. The trial court sentenced defendant to time served (32 days) for the felonious assault conviction and two years' imprisonment for the felony-firearm conviction. We affirm.

## I. FACTUAL BACKGROUND

This case arises out of a shooting that occurred in the evening on July 1, 2015, in Detroit, Michigan. At the time, Earl Hall and his wife, Nicole Hall, were walking home from Nicole's job with the couple's three infant children and five-month-old "American Bully Miniature" dog. Earl recently had learned that Nicole had a sexual relationship with defendant, who lived a few blocks away from the Hall family. As they walked past defendant's house on the way home, Earl told Nicole that she should tell defendant's wife, Adia Clark, about the affair. Accordingly, Nicole initiated a short conversation with Adia outside of defendant's residence. After the conversation, the Hall family continued to walk home.

A few minutes later, defendant approached the family in his blue Chrysler 200, driving over the grass and onto the sidewalk directly in front of Earl. According to Earl, defendant got out of the car and asked if Earl was "out of [his] f***ing mind." Earl and Nicole both testified that defendant pulled out a handgun and fired one shot towards Earl. The family fled in different directions, and defendant drove away. Earl called 911 after the family was reunited approximately 40 minutes later.

After the incident, defendant reported to the police that he fired his weapon in the direction of Earl's dog because it had lunched at him. At trial, defendant similarly

acknowledged that he discharged a firearm during the incident, but explained, once again, that he did so as a reflexive response to the dog's act of lunching towards him.

Defendant was convicted and sentenced as previously discussed.

## II. EVIDENTIARY CHALLENGES

Defendant argues that the trial court abused its discretion when it admitted a recording of Earl's 911 telephone call because it was inadmissible hearsay that did not fall under the excited utterance exception and its admission amounted to improper bolstering of a witness with a prior consistent statement. Additionally, defendant argues that the trial court erred when it allowed the prosecutor to question Earl about his written police statement because the questioning also amounted to improper bolstering of a witness with a prior consistent statement. We disagree.

### A. STANDARD OF REVIEW

We review a trial court's decision to admit evidence for an abuse of discretion. *People v Mardlin*, 487 Mich 609, 614; 790 NW2d 607 (2010); *People v Aldrich*, 246 Mich App 101, 113; 631 NW2d 67 (2001). An abuse of discretion occurs if the trial court's decision "is outside the range of reasonable and principled outcomes." *People v Orr*, 275 Mich App 587, 588-589; 739 NW2d 385 (2007). "When the decision involves a preliminary question of law, . . . such as whether a rule of evidence precludes admission, we review the question de novo." *Mardlin*, 478 Mich at 614.

Even if a trial court's admission or exclusion of evidence was improper, we will not set aside a judgment or verdict unless it affirmatively appears that the error resulted in a miscarriage of justice. MCL 769.26. Put another way, under MCL 769.26, "a preserved, nonconstitutional error is not a ground for reversal unless after an examination of the entire cause, it shall affirmatively appear that it is more probable than not that the error was outcome determinative." *People v Lukity*, 460 Mich 484, 495-496; 596 NW2d 607 (1999) (quotation marks omitted). See also MCR 2.613(A) ("An error in the admission or the exclusion of evidence . . . is not ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take this action appears to the court inconsistent with substantial justice.").

### B. EXCITED UTTERANCE

"[H]earsay is an unsworn, out-of-court statement that is offered in evidence to prove the truth of the matter asserted." *People v Musser*, 494 Mich 337, 350; 835 NW2d 319 (2013) (quotation marks omitted), citing MRE 801. "Hearsay is generally prohibited and may only be admitted at trial if provided for in an exception to the hearsay rule." *People v Gursky*, 486 Mich 596, 606; 786 NW2d 579 (2010), citing MRE 802. The Michigan Rules of Evidence include an exception for "excited utterances." MRE 803(2). An excited utterance is "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." MRE 803(2). "The rule allows hearsay testimony that would otherwise be excluded because it is perceived that a person who is still under the sway of excitement precipitated by an external startling event will not have the reflective capacity

essential for fabrication so that any utterance will be spontaneous and trustworthy." *People v Smith*, 456 Mich 543, 550; 581 NW2d 654 (1998) (quotation marks and citation omitted).

There are two primary requirements for an out-of-court statement to qualify under the excited utterance exception: (1) a startling event must have occurred, and (2) the resulting statement must have been made while the declarant was under the stress of excitement caused by the event. *Id*. "While the time that passes between the event and the statement is important in determining whether the declarant was still under the stress of the excitement when the statement was made, the focus of the exception is on the declarant's 'lack of capacity to fabricate, not the lack of time to fabricate.' " *People v Layher*, 238 Mich App 573, 583; 607 NW2d 91 (1999), aff'd 464 Mich 765 (2001), quoting *Smith*, 456 Mich at 551. Stated differently, "[t]he pertinent inquiry is not whether there has been time for the declarant to fabricate a statement, but whether the declarant is so overwhelmed that she lacks the capacity to fabricate." *People v McLaughlin*, 258 Mich App 635, 659-660; 672 NW2d 860 (2003).

The trial court has wide discretion in determining whether a declarant is still under the stress of a startling event. *People v Green*, 313 Mich App 526, 536; 884 NW2d 838 (2015), citing *Smith*, 456 Mich at 552. Additionally, "a trial court's decision on a close evidentiary question ordinarily cannot be an abuse of discretion." *People v Hine*, 467 Mich 242, 251; 650 NW2d 659 (2002), citing *Smith*, 456 Mich at 550.

Defendant does not contest that a startling event occurred. Rather, he argues that Earl made the 911 call 40 minutes after the shooting occurred and, therefore, could not have been under the stress of excitement caused by the shooting when he called the police. Defendant also emphasizes that the period of time between the startling event and the 911 call, and the fact that Earl was reunited with his family during that time, gave Earl an opportunity to speak with Nicole and fabricate his statements. These arguments are unavailing.

Earl testified that he ran to a nearby alley after the shooting and hid while defendant circled the block at least three times in his car. After hiding for approximately 20 to 30 minutes, Earl ran home, hoping that his wife and children were inside. Discovering that they had not returned, Earl went back out, jumped a fence, and found his wife and children one street away. Earl testified that when the family finally returned home, Nicole and the children were crying, and he immediately called the police. He expressly confirmed that he was still "in shock" from the shooting when he called 911.

Considering the events that transpired between the time of the shooting and the phone call, the trial court did not abuse its discretion when it determined that Earl's statements during the 911 call fell within the excited utterance exception to the rule against hearsay. See MRE 803(2). While the lapse in time is relevant, the primary focus is whether Earl was so overwhelmed that he lacked the capacity to fabricate. *McLaughlin*, 258 Mich App at 659-660. Although defendant claims that there was plenty of time before the 911 call for Earl and Nicole to discuss the events that had occurred and fabricate a consistent story, the testimony shows that both of them were still under the stress of the shooting, as well as the events that transpired immediately after the shooting, when Earl called 911. The trial court's ruling was within the range of reasonable and principled outcomes. *Orr*, 275 Mich App at 588-589.

## C. BOLSTERING

Defendant also argues that the 911 call was inadmissible because it constituted a prior consistent statement improperly proffered by the prosecution to bolster Earl's testimony. Even if the trial court's admission of the statement was improper on this basis, defendant has failed to establish that reversal is warranted.

In general, it is impermissible for a party in a criminal trial to bolster a witness's trial testimony using a prior consistent statement made by that witness. *People v Hallaway*, 389 Mich 265, 275-276; 205 NW2d 451 (1973) (BRENNAN, J.); *People v Lewis*, 160 Mich App 20, 29; 408 NW2d 94 (1987); *People v Rosales*, 160 Mich App 304, 308; 408 NW2d 140 (1987); *People v Smith*, 158 Mich App 220, 227; 405 NW2d 156 (1987). However, admission of such a statement may be proper in accordance with MRE 801(d)(1)(B). See also *People v Jones*, 240 Mich App 704, 707; 613 NW2d 411 (2000); *Lewis*, 160 Mich App at 29-30; *Smith*, 158 Mich App at 227. Neither party addresses the application of MRE 801(d)(1)(B) in its brief on appeal.

Regardless, we need not determine whether the prosecution improperly bolstered Earl's in-court testimony with the 911 call because defendant cannot show that its admission affected the outcome of the proceedings. See MCL 769.26; MCR 2.613(A); *Lukity*, 460 Mich at 495-496. Notably, defendant never disputed that he discharged a weapon during his encounter with Earl. Rather, he contended that he fired the weapon in order to protect himself from Earl's dog. The 911 call was cumulative to Earl's in-court testimony to the extent that it established that, from Earl's perspective, defendant shot at Earl and his family without provocation or justification. Although "the fact that the statement was cumulative, standing alone, does not automatically result in a finding of harmless error," there is no basis for concluding that defendant was prejudiced by the admission of the 911 call. *Smith*, 456 Mich at 555; see also *id*. ("Harmless error review requires reversal only if the error is prejudicial."). We consider the entire record in determining whether the admission of the evidence was harmless in light of the weight and strength of the untainted evidence. *Id*. Earl's statements during the 911 call provided no further insight regarding defendant's intent in discharging the gun, which was the pivotal issue at trial given the fact that defendant explicitly acknowledged that he fired the weapon during the incident. If the jury believed defendant's claim that he fired the weapon in order to protect himself from Earl's dog, acquittal may have been justified. Otherwise, however, the "untainted" evidence overwhelmingly showed that defendant, at a minimum, fired a weapon in Earl's direction, given Earl's close proximity to the dog during the incident. As a result, there simply is no basis for concluding that the 911 call was outcome-determinative. See *Lukity*, 460 Mich at 495-496; see also *Smith*, 456 Mich at 555. Thus, we reject defendant's claim that reversal is warranted based on the trial court's admission of the 911 call recording.

Next, defendant argues that the trial court erred when it allowed the prosecutor to question Earl about his prior written statement to the police, as this questioning amounted to improper bolstering with a prior consistent statement. He only challenges one portion of the prosecutor's questions concerning the statement. Earl testified on direct examination that Nicole and their three children were present at the time of the shooting. Then, while still on direct

examination, the prosecutor showed Earl his prior police statement and asked, "Did you put in . . . your written statement [sic] about your wife and children being with you when the shooting took place?" Earl replied, "Yes, I did."[1]

Defendant asks in his brief on appeal, "For what other purpose did the prosecutor use [Earl's] prior written statement if not for the sole purpose of bolstering his credibility?" In raising this claim, defendant fails to recognize the overview and context of the prosecutor's questions. When considered in context, defendant's claim is not supported by the record. It is apparent that the prosecution was not attempting to elicit consistent testimony from Earl, but attempting to provide an explanation for Earl's prior statements, which were inconsistent with his trial testimony. Immediately after the testimony challenged by defendant, the prosecutor questioned Earl about whether he mentioned in his police statement that his dog was present during the incident, using Earl's prior written statement to show that he did not immediately tell the police anything about his dog and to provide an opportunity for Earl to explain why he failed to do so. There is no indication that the prosecution attempted to bolster Earl's in-court testimony using a prior consistent statement with his written statement to the police.

Even if we assume, arguendo, that the admission of this evidence was erroneous, the error was harmless for the same reasons previously discussed. See MCL 769.26; MCR 2.613(A); *Lukity*, 460 Mich at 495-496; *Smith*, 456 Mich at 555. Earl's prior testimony in this regard was cumulative to his trial testimony and provided no insight concerning the central issue of the case (*i.e.*, whether defendant acted out of self-protection based on the behavior of Earl's dog). Defendant has failed to establish that reversal is warranted based on the isolated prior consistent statement that he identifies in his brief on appeal.

## III. GREAT WEIGHT OF THE EVIDENCE

Next, defendant argues that the jury's verdict was against the great weight of the evidence. We disagree.

## A. STANDARD OF REVIEW AND APPLICABLE LAW

We review for an abuse of discretion a trial court's decision to deny a motion for a new trial on the ground that the verdict was against the great weight of the evidence. *People v Gaines*, 306 Mich App 289, 297; 856 NW2d 222 (2014); see also MCR 2.611(A)(1)(e) (stating that a new trial may be granted, on some or all of the issues, if a verdict is against the great weight of the evidence).

> The test to determine whether a verdict is against the great weight of the evidence
> is whether the evidence preponderates so heavily against the verdict that it would
> be a miscarriage of justice to allow the verdict to stand. . . . . [U]nless it can be

---

[1] The prosecutor asked this question a second time after the trial court addressed defense counsel's objection to the prosecution's questioning about the written statement. Earl provided an identical response.

said that directly contradictory testimony was so far impeached that it was deprived of all probative value or that the jury could not believe it, or contradicted indisputable physical facts or defied physical realities, the trial court must defer to the jury's determination. [*People v Musser*, 259 Mich App 215, 218-219; 673 NW2d 800 (2003) (quotation marks and citations omitted; alteration in original).]

Accordingly, "[i]n general, conflicting testimony or questions concerning the credibility of the witnesses are not sufficient grounds for granting a new trial." *People v Brantley*, 296 Mich App 546, 553; 823 NW2d 290 (2012). See also *People v Lemmon*, 456 Mich 625, 642-647; 576 NW2d 129 (1998); *People v Unger*, 278 Mich App 210, 232; 749 NW2d 272 (2008).

## B. ANALYSIS

Defendant argues that the following evidence severely impeached Earl's credibility so that no reasonable jury could believe his testimony: (1) evidence of his prior felony conviction involving a crime of dishonesty, (2) a Facebook post in which Earl admitted that he lies to judges, (3) portions of Nicole's trial testimony that contradicted Earl's testimony, and (4) portions of Officer Nicholas Medrano's testimony that discredited Earl's testimony on two occasions. We disagree.

All of this evidence implicated Earl's credibility as a witness and is not grounds for granting a new trial. See *Brantley*, 296 Mich App at 553; *Musser*, 259 Mich App at 218-219. Earl's credibility was diminished by the fact that he has a prior felony conviction involving a crime of dishonesty and by the fact that he posted a statement on Facebook claiming that he lies to judges. However, these facts did not deprive his testimony of all probative value or demonstrate that his testimony "contradicted indisputable physical facts or defied physical realities . . . ." *Musser*, 259 Mich App at 219. Similarly, Earl's and Nicole's inconsistent statements implicated their credibility. Earl testified that Nicole and the children were not there when he arrived home after the shooting, so he left the house again, ultimately finding his family one street away. However, Nicole testified that Earl was already at the house when she came home with the children. While their testimony differed to a certain extent, we must defer to the jury's credibility determinations. *Musser*, 259 Mich App at 218-219. In no way was their testimony so deprived of all probative value that a new trial was warranted. See *id*. Instead, the differing testimony concerned ancillary events that occurred after the focal point of this case—the shooting—and the minor inconsistencies only raised credibility questions properly left to the jury.

Likewise, the contradictions between Earl's and Medrano's testimony are not sufficient to warrant a new trial. See *Musser*, 259 Mich App at 218-219. Defendant emphasizes the portions of Medrano's testimony about Earl's statement to police. According to Medrano, Earl told officers—contrary to his testimony at trial—that he went straight home after the shooting and never saw defendant again. Thus, contrary to Earl's testimony at trial, Medrano's testimony indicated that Earl never mentioned when he spoke to police after the incident that he hid in an alley while defendant circled the block three times. Additionally, Medrano explained that Earl told the officers after the incident that defendant was in his car when he fired the handgun. However, at trial, Earl testified that defendant got out of the car, pointed the gun at him, and fired a single shot. Medrano's testimony, while contradictory, did not deprive Earl's testimony of all

-6-

probative value. Importantly, defendant identifies no evidence that directly contradicted whether the shooting actually occurred. Further, defendant's trial testimony confirms that he was not in his car when the shooting occurred because he claimed that Earl's dog lunged at him after he exited the vehicle.

Ultimately, it was the jury's responsibility to weigh the contradictory testimony; none of narrow circumstances that justify a new trial are present here. *Musser*, 259 Mich App at 218-219; *Brantley*, 296 Mich App at 553. The verdict was not against the great weight of the evidence, and the trial court did not abuse its discretion when it denied defendant's motion for a new trial. See *Gaines*, 306 Mich App at 297.

## IV. PROSECUTORIAL MISCONDUCT

Defendant next contends that the prosecutor's comments during her closing arguments violated his right to a fair trial. Specifically, defendant claims that the prosecutor's comments were improper because she vouched for the witnesses' credibility and denigrated defense counsel. We disagree.

## A. STANDARD OF REVIEW AND APPLICABLE LAW

"In order to preserve an issue of prosecutorial misconduct, a defendant must contemporaneously object and request a curative instruction." *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). Defense counsel objected to the prosecutor's statement that Earl and Nicole were "honest" and to the prosecutor's statements about defense counsel. Thus, defendant's claims with regard to those statements are preserved. However, defense counsel did not object to the prosecutor's statements during her closing argument that Earl and Nicole did not "over exaggerate[]" and that the 911 call was consistent with Earl's testimony. Accordingly, defendant's claims with regard to those statements are unpreserved.

Preserved "[i]ssues of prosecutorial misconduct are reviewed de novo to determine whether the defendant was denied a fair and impartial trial." *Bennett*, 290 Mich App at 475. However, unpreserved claims of prosecutorial misconduct are reviewed for plain error affecting the defendant's substantial rights. *Id*. at 475-476. To demonstrate plain error, a defendant must show that (1) an error occurred, (2) the error was clear or obvious, and (3) "the plain error affected [the defendant's] substantial rights," which "generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). Even if a defendant establishes a plain error that affected his substantial rights, "[r]eversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. at 763-764 (quotation marks and citation omitted; second alteration in original); see also *Bennett*, 290 Mich App at 475-476. "Further, [this Court] cannot find error requiring reversal where a curative instruction could have alleviated any prejudicial effect." *Bennett*, 290 Mich App at 476 (quotation marks and citations omitted; alteration in original). See also *Unger*, 278 Mich App at 234-235.

We review prosecutorial misconduct claims on a case-by-case basis, examining the prosecutor's remarks in context. *People v Mann*, 288 Mich App 114, 119; 792 NW2d 53 (2010); *People v Dobek*, 274 Mich App 58, 63-64; 732 NW2d 546 (2007). In general, " '[p]rosecutors are accorded great latitude regarding their arguments and conduct.' " *People v Cooper*, 309 Mich App 74, 90; 867 NW2d 452 (2015) (alteration in original), quoting *People v Bahoda*, 448 Mich 261, 282; 531 NW2d 659 (1995). "[A] prosecutor's comments must be read as a whole and evaluated in light of defense arguments and the relationship they bear to the evidence admitted at trial." *People v Callon*, 256 Mich App 312, 330; 662 NW2d 501 (2003). "Otherwise improper prosecutorial conduct or remarks might not require reversal if they address issues raised by defense counsel." *Dobek*, 274 Mich App at 64.

## B. WITNESS VOUCHING

"Included in the list of improper prosecutorial commentary or questioning is the maxim that the prosecutor cannot vouch for the credibility of his witnesses to the effect that he has some special knowledge concerning a witness' truthfulness." *Cooper*, 309 Mich App at 90 (quotation marks and citation omitted). "The danger is that the jury will be persuaded by the implication that the prosecutor has knowledge that the jury does not and decide the case on this basis rather than on the evidence presented." *Bennett*, 290 Mich App at 477. However, "a prosecutor may comment on his own witnesses' credibility during closing argument, especially when there is conflicting evidence and the question of the defendant's guilt depends on which witnesses the jury believes." *People v Jackson*, 313 Mich App 409, 426; 884 NW2d 297 (2015) (quotation marks and citation omitted). Furthermore, although prosecutors are not permitted to make a factual statement that is not supported by evidence in the record, prosecutors are generally free to argue the evidence and all reasonable inferences related to their theory of the case. *Dobek*, 274 Mich App at 66. They also are not required to confine their statements "to the blandest possible terms." *Id*.

During closing argument, the prosecutor explained that Earl's 911 call was basically consistent with his testimony at trial. Additionally, the prosecutor argued that neither Earl nor Nicole "over exaggerated" when they described the shooting because they both said that only one shot had been fired, not multiple shots. Defense counsel did not object to these statements, and defendant has failed to show how these statements constituted plain error affecting his substantial rights. *Carines*, 460 Mich at 763-764. The outcome of the trial hinged on the jury's credibility determinations, and defense counsel went to great measures to attack Earl's credibility. Accordingly, the prosecutor properly commented on her own witnesses' credibility. See *Jackson*, 313 Mich App at 426; *Callon*, 256 Mich App 312. At no time did the prosecutor claim to have special knowledge regarding Earl's and Nicole's truthfulness. *Cooper*, 309 Mich App at 90. Instead, the prosecutor discussed the evidence at trial and argued that it corroborated the witnesses' testimony. *Dobek*, 274 Mich App at 66. While the prosecutor stated that the witnesses did not "over exaggerate," she was not confined to using the blandest possible terms in making her arguments. *Id.* Thus, defendant cannot demonstrate that these statements constituted plain error affecting his substantial rights.

Defendant also claims that the prosecutor vouched for Earl's and Nicole's credibility by stating that they were "honest." Defendant has failed to establish that he was denied a fair trial based on this statement. See *Bennett*, 290 Mich App at 475. When defense counsel objected to

the prosecutor's statement, the trial court warned the prosecutor that she could not simply state that the witnesses were truthful, but she could provide arguments as to *why* the witnesses were truthful. The prosecutor's statement was impermissible. However the error was cured by the trial court's jury instruction. The court instructed the jury that the attorneys' statements and arguments were not evidence, and that jury should not consider them as such. We must presume that the jury followed the court's instructions. *People v Fyda*, 288 Mich App 446, 465; 793 NW2d 712 (2010).

## C. DENIGRATING COMMENTS

As previously mentioned, "a prosecutor's comments must be read as a whole and evaluated in light of defense arguments and the relationship they bear to the evidence admitted at trial." *Callon*, 256 Mich App at 330. However, "the prosecutor may not suggest that defense counsel is intentionally attempting to mislead the jury." *Fyda*, 288 Mich App at 461. Such an argument may have a negative effect on the presumption of innocence:

> When the prosecutor argues that the defense counsel himself is intentionally trying to mislead the jury, he is in effect stating that defense counsel does not believe his own client. This argument undermines the defendant's presumption of innocence. Such an argument impermissibly shifts the focus from the evidence itself to the defense counsel's personality. [*Id.* (quotation marks and citation omitted).]

But, again, "[o]therwise improper prosecutorial conduct or remarks might not require reversal if they address issues raised by defense counsel." *Dobek*, 274 Mich App at 64; see also *People v Watson*, 245 Mich App 572, 592-593; 629 NW2d 411 (2001) ("[T]he prosecutor's comments must be considered in light of defense counsel's comments. [A]n otherwise improper remark may not rise to an error requiring reversal when the prosecutor is responding to the defense counsel's argument.") (quotation marks and citations omitted).

The record clearly shows that the prosecutor's remarks regarding defense counsel's trial style were made in response to defense counsel's argument that the prosecutor should have played the entire 45-minute video of the detective's interview with defendant instead of having the detective read in only a small portion of defendant's statement. During her closing argument, defense counsel stated, "So shame on the government for doing that because if it was the way [the prosecutor] said that he was leaving out all these important details, then as the prosecutor and as . . . finder of fact you should of [sic] insisted and should insist." Defense counsel further suggested to the jury that "you're hampered in your ability to make critical and fundamental decisions" because the full video was not played at trial. On rebuttal, the prosecutor attempted to explain that only a small portion of the interview was read into the record during the trial because the rest of the video would have been a waste of time, not because the prosecution intended to withhold evidence from the jury. In conjunction with that explanation, the prosecutor said, "And regarding the video tape, I have my style of putting on a case and defense counsel has hers as you've seen. She likes to ask questions multiple times, the same question." When reviewed in context with defense counsel's argument, *Mann*, 288 Mich App at 119; *Callon*, 256 Mich App at 330, it is apparent that the prosecutor's statement did not suggest that defense counsel was trying to mislead the jury. Instead, the prosecutor responded to defense

counsel's claims about the prosecution's case and explained why the entire video was not played for the jury.

Thus, the prosecution's comments did not violate defendant's right to a fair trial. *Bennett*, 290 Mich App at 475.

## V. CONCLUSION

Defendant has failed to establish that any of his claims warrant relief.

Affirmed.

/s/ Michael J. Riordan
/s/ Amy Ronayne Krause
/s/ Brock A. Swartzle