# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
December 9, 2014

       Plaintiff-Appellee,

v

No. 317244
Wayne Circuit Court
LC No. 12-005081-FC

JONATHAN CLIFFORD,

       Defendant-Appellant.

Before: RIORDAN, P.J., and BECKERING and BOONSTRA, JJ.

PER CURIAM.

Defendant appeals by right his convictions, following a jury trial, of two counts of first-degree criminal sexual conduct (CSC I), MCL 750.520b(1)(a) (victim under 13 years old) and MCL 750.520b(1)(b)(*ii*) (victim between 13 and 16 years old and related to actor), and two counts of second-degree criminal sexual conduct (CSC II), MCL 750.520c(1)(a) (victim under 13 years old). He was sentenced to concurrent terms of imprisonment of 15 to 40 years for the CSC I convictions and 10 to 15 years for the CSC II convictions. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

The victim testified that defendant is her uncle, and that she spent a great deal of time at her grandmother's (defendant's mother) house during the time she was in kindergarten through seventh grade. The victim testified that defendant began sexual activity with her when she was five years old and defendant was sixteen. She testified that defendant would rub his penis on her lower back and buttocks until he ejaculated, and that sometimes he would have her touch his penis and perform masturbation on him. She testified that this would occur in the basement, and that her grandmother usually was in her room on the first floor of the home. Complainant explained that her bedroom was on the same floor of the house as her grandmother's, and that defendant's room was on the second floor. When asked if defendant "ever said anything or how exactly it started," complainant testified that "[h]e didn't really say much. But before it happened he would say it's time for punishment." She testified that this happened frequently between kindergarten and third grade.

The victim testified that defendant began having her perform oral sex on him when she was eight years old and in third grade. She testified that this occurred in defendant's room and that defendant would call her upstairs. She further explained that there may have been other people in the home when these incidents occurred, but they were not upstairs.

-1-

When asked when the last time was that she remembered something happening, the victim answered that defendant had her "give him oral sex" the summer before eighth grade when she was 13. Complainant was asked whether there was a time when defendant's penis entered a part of her body other than her mouth. She testified that on one occasion in third grade, "[h]is penis slipped in [her] butt." Complainant testified that she never told anyone about these incidents. When asked why, she stated, "I don't have a reason. I just didn't. I just kept it to myself." The victim stated that she eventually told her mother about these incidents after she moved out of her grandmother's house at the end of seventh grade.

Dearborn Police Department Sergeant Jeffrey Gee testified that defendant attended an interview at the Dearborn Police Department on October 5, 2011 at 9:30 a.m. Gee testified that defendant's mother was with him. Gee testified that he told defendant he was free to leave at any time. Defendant was given an advice of *Miranda*[1] rights form which he signed.

Gee testified that defendant spoke about the victim, "telling [Gee] her problems, and that "[h]e ha[d] a lot of difficulty explaining to me why she's making this complaint." Gee testified that defendant indicated that the victim may have been lying at her mother's request. When asked if he directly questioned him about the sexual allegations, Gee testified that approximately "20 minutes, 25 minutes" after the sexual allegations were brought up defendant admitted that there was some "consensual" sexual contact. Gee explained that he asked defendant whether the victim initiated sexual conduct with him and that defendant stated that she had. He stated that defendant indicated "[t]hat he felt maybe [the victim] had some infatuation with him and that ultimately that led to some consensual hugging, kissing, and sexual fondling" Gee testified that "[defendant] specifically said that she rubbed his penis over his clothing." When asked if defendant had said when these acts occurred, Gee testified, "[a]round the 2010, the time frame we were speaking specifically of." He further testified that defendant stated that these incidents took place "at his house on Freeland Street in Detroit." He also testified that defendant denied that oral or anal sex had ever taken place with the victim.

Gee testified that he brought Investigator Turner into the room with him. He testified, "I explained to [defendant] that, you know, I was going to reiterate what he said about the case to Investigator Turner, and I told him if anything I was saying was incorrect or untrue in any way, just stop me". Gee testified that he then explained the conversation described above to Turner, and that defendant never corrected him.

Investigator Turner testified that she wrote down a statement given by defendant that conformed with what defendant had told Gee. Turner testified that she read defendant's answers aloud to him and told him to initial next to each line if it was correct, which he did. She also testified that she told defendant to sign the statement if it was everything that he said, and that he did so.

Defendant presented members of his family who testified that the victim had never indicated that she had been sexually assaulted by defendant, and further that children were not allowed upstairs in the home where the alleged activity occurred. Defendant's mother further

---

[1] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

testified that there "hard feelings" between her and the victim's mother, and that she never observed defendant ask the victim to go upstairs or observed the victim go upstairs alone with defendant.

At sentencing, defendant moved for a judgment notwithstanding the verdict. The trial court denied defendant's motion, explaining that "the simple fact of the matter is that the testimony of [complainant] enough or alone was sufficient to win the day, so to speak, for the prosecution in this case." The trial court sentenced defendant as described above. This appeal followed.

## II. SUFFICIENCY OF THE EVIDENCE

Defendant first argues that there was insufficient evidence to support his convictions. We review a defendant's challenge to the sufficiency of the evidence de novo. *People v Meissner*, 294 Mich App 438, 452; 812 NW2d 37 (2011). In reviewing the sufficiency of the evidence, this Court must view the evidence in the light most favorable to the prosecution and determine whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt. *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012). However, we do not interfere with the factfinder's role of determining the weight of evidence or the credibility of witnesses. *People v Wolfe*, 440 Mich 508, 514; 489 NW2d 748, amended 441 Mich 1201 (1992). It is for the trier of fact rather than this Court to determine what inferences can be fairly drawn from the evidence and to determine the weight to be accorded to the inferences. *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002). A prosecutor need not negate every reasonable theory of innocence, but must only prove his own theory beyond a reasonable doubt in the face of whatever contradictory evidence the defendant provides. *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000). Circumstantial evidence and the reasonable inferences that arise from such evidence can constitute satisfactory proof of the elements of the crime. *People v Carines*, 460 Mich 750, 757; 597 NW2d 130 (1999). We resolve all conflicts in the evidence in favor of the prosecution. *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008).

For purposes of this prosecution, MCL 750.520b(1) provides in relevant part as follows:

A person is guilty of criminal sexual conduct in the first degree if he or she engages in sexual penetration with another person and if any of the following circumstances exist:

(a) That other person is under 13 years of age.

(b) That other person is at least 13 but less than 16 years of age and any of the following:

* * *

(*ii*) The actor is related to the victim by blood or affinity to the fourth degree.

MCL 750.520c(1)(a) states as follows:

A person is guilty of criminal sexual conduct in the second degree if the person engages in sexual contact with another person and if any of the following circumstances exist:

(a) That other person is under 13 years of age.

"Sexual penetration" is defined as, among other acts, "sexual intercourse, cunnilingus, fellatio, anal intercourse . . . ." MCL 750.520a(r).

At trial, the victim testified that defendant was her uncle. She testified that when she was five years old, which would have been when defendant was 16 years old, defendant began rubbing his penis on her lower back and "towards [her] butt" while her clothes were "pushed up." She testified that over essentially the entire time she was in elementary and middle school defendant would masturbate and ejaculate on her back, rub Vaseline on her butt and "move[] back and forth" and have her "ejaculate himself," touch her chest, and have her perform oral sex (i.e., fellatio) on him. The victim's testimony in and of itself establishes the required elements for each of defendant's convictions. MCL 750.520h. Further, to the extent defendant argues that the victim's testimony was not credible and contradicted by the testimony of his own witnesses, "[i]t is for the jury to determine witness credibility and resolve inconsistencies of testimony." *People v Harverson*, 291 Mich App 171, 179; 804 NW2d 757 (2010).[2] There was sufficient evidence to support defendant's convictions.

## III. PROSECUTORIAL MISCONDUCT

Second, defendant argues that he was denied his right to a fair trial due to prosecutorial misconduct. "Review of alleged prosecutorial misconduct is precluded unless the defendant timely and specifically objects, except when an objection could not have cured the error, or a failure to review the issue would result in a miscarriage of justice." *People v Callon*, 256 Mich App 312, 329; 662 NW2d 501 (2003). Defendant admittedly failed to preserve this issue. Accordingly, our review is for plain error affecting substantial rights. *Id*.

"The test of prosecutorial misconduct is whether the defendant was denied a fair and impartial trial (i.e., whether prejudice resulted). Prosecutorial-misconduct issues are decided case by case, and the reviewing court must examine the pertinent portion of the record and evaluate a prosecutor's remarks in context." *People v Abraham*, 256 Mich App 265, 272-273; 662 NW2d 836 (2003). "Curative instructions are sufficient to cure the prejudicial effect of most inappropriate prosecutorial statements, and jurors are presumed to follow their instructions." *People v Unger*, 278 Mich App 210, 235; 749 NW2d 272 (2008) (citations omitted).

---

[2] Even though corroborating evidence was not required, Gee and Turner testified that defendant admitted to them "that there was some consensual hugging, kissing, and some sexual contact, fondling[]" and "[h]er hands were feeling on [defendant's] penis." These admissions establish the required elements of each of defendant's CSC II convictions.

Defendant argues that the prosecution misstated its burden of proof by indicating that the jury was to convict defendant if it believed the victim's testimony. During voir dire, the prosecution stated as follows: "At the end of this case the judge is going to give you an instruction, and he's going to tell you that if you believe the testimony of the victim, you do not need anything else in order to convict." The trial court immediately interjected and explained that "if [the jury] believe[d] the complaining witness's testimony, is, in fact, believable by [the jury] beyond a reasonable doubt and that that testimony has established beyond a reasonable doubt that the defendant has, in fact, committed the crime or crimes with which he's charged," then that testimony alone was sufficient to render a guilty verdict, even without corroboration.

The prosecution then continued its voir dire of jurors, asking, "if all I presented was the victim's testimony and you decided that you believed the victim, would you be able to render a verdict of guilty?" and other similar questions. Again the trial court interrupted, explaining that the "proviso" of beyond a reasonable doubt must be included in the prosecution's question. The court then recognized that jurors were confused and explained, "if you believe the testimony of the one witness beyond a reasonable doubt that the defendant is guilty of the charge, that's really all you need[.]" From that point on during voir dire, whenever the prosecution returned to the issue of believing the victim, it included the proviso that the jury must believe the victim's testimony beyond a reasonable doubt. In its preliminary jury instructions, the trial court also instructed the jury that "[t]o prove any of these charges, it is not necessary that there be evidence other than the testimony of [the victim] if that testimony proves guilt beyond a reasonable doubt."

The prosecution also expressly referred to the beyond a reasonable doubt standard in both its opening statement and closing argument. However, in its rebuttal argument, the prosecution concluded as follows:

> If you go back in that jury room and you say I believe [the victim], your verdict is guilty. If you go back in the room and you say I believe Investigator Turner, I believe Detective Gee about what was said, your verdict is guilty. I submit to you that that is what the evidence supports in this case, and that's what you should return. Thank you.

The court's closing jury instructions followed. The court explained that the prosecution must prove every element of each crime beyond a reasonable doubt, and repeated the earlier preliminary instruction that only the victim's testimony was necessary to convict defendant.

Defendant characterizes those of the prosecution's references to the sufficiency of victim's testimony that did not specifically mention the beyond a reasonable doubt standard as "essentially lowering [the burden of proof] to mere belief." However, the prosecution's statements are consistent with both MCL 750.520h[3] and caselaw. See, e.g., *People v Brantley*, 296 Mich App 546; 823 NW2d 290 (2012), quoting *People v Szalma*, 487 Mich 708, 712 n 5;

---

[3] "The testimony of a victim need not be corroborated in prosecutions under sections 520b to 520g." MCL 750.520h.

790 NW2d 662 (2010) (" '[T]he complainant's testimony can, by itself, be sufficient to support a conviction' of criminal sexual conduct."). In any event, the court's timely interjections and clear instructions sufficiently apprised the jury of the burden of proof. "Jurors are presumed to follow their instructions . . . ." *Abraham*, 256 Mich App at 279; see also *Unger*, 278 Mich App at 235-236.

Defendant alternatively argues that the trial court should have sua sponte provided a curative instruction. As stated above, the court did immediately provide curative instructions during voir dire, and properly instructed the jury regarding the prosecution's burden of proof in its preliminary and closing jury instructions. We find no plain error requiring reversal in either the prosecution's statements or the trial court's instructions. *Callon*, 256 Mich App at 329.

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

Lastly, defendant argues that his trial counsel was ineffective for failing to seek a psychological evaluation and for failing to object to the prosecution's conduct as described above. Defendant first moved for a *Ginther*[4] hearing in this Court, which was denied.[5] Therefore, our review of this issue is limited to errors apparent on the record. *People v Johnson*, 293 Mich App 79, 90; 808 NW2d 815 (2011).

> A defendant must meet two requirements to warrant a new trial because of ineffective assistance of trial counsel. First, the defendant must show that counsel's performance fell below an objective standard of reasonableness. In doing so, the defendant must overcome the strong presumption that counsel's assistance constituted sound trial strategy. Second, the defendant must show that, but for counsel's deficient performance, a different result would have been reasonably probable. [*People v Armstrong*, 490 Mich 281, 290; 806 NW2d 676 (2011).]

With regard to the prosecution supposedly lowering the burden of proof, we find that argument, as noted above, to be without merit. "Failing to advance a meritless argument or raise a futile objection does not constitution ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

With regard to trial counsel's failure to seek a psychological evaluation of his client, "[a]n attorney's decision whether to retain witnesses, including expert witnesses is a matter of trial strategy." *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009). "In general, the failure to call a witness can constitute ineffective assistance of counsel only when it deprives the defendant of a substantial defense." *Id*. (citations and internal quotation marks omitted).

---

[4] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

[5] See *People v Clifford*, unpublished order of the Court of Appeals, entered June 23, 2014 (Docket No. 317244).

Defendant argues that expert testimony should have been provided regarding his potential susceptibility to falsely confess. In *People v Kowalski*, 492 Mich 106, 132; 821 NW2d 14 (2012), a defendant presented experts who "proposed to offer testimony based on research and literature about the phenomenon of false confessions." The Supreme Court upheld the exclusion of this type of evidence as unreliable under MRE 702. *Id.* at 133. Nevertheless, the Supreme Court arguably left the door open for testimony "regarding [that particular] defendant's psychological profile." *Id.* at 136-138.

Trial counsel in this case stated during a motion hearing that in order to get an independent psychological evaluation, defendant first "ha[d] to be sent to the Forensic Center" because "that [is] the road map they require here." On appeal, defendant claims this is untrue and not supported by statute or caselaw. However, there is nothing in the record indicating that such an evaluation would have been admissible or even favorable to defendant. Therefore, defendant has not demonstrated that trial counsel's decision not to seek a psychological evaluation fell below an objective standard of reasonableness sufficiently to overcome the presumption that counsel's actions constituted a reasonable strategy.

Further, defendant has not demonstrated that he was prejudiced by counsel's actions. Defendant does not show that a psychological evaluation would have been favorable to his case. Instead, he merely hypothesizes that it might have been. And even if an evaluation would have been favorable, the jury still may have discounted it or relied entirely upon victim's testimony to convict defendant. In sum, the mere possibility that such evaluation could have been favorable and could have made an impact on the jury is insufficient to demonstrate "a probability sufficient to undermine confidence in the outcome." *Strickland v Washington*, 466 US 668, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984).

Affirmed.

/s/ Michael J. Riordan
/s/ Jane M. Beckering
/s/ Mark T. Boonstra