# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
March 17, 2015

Plaintiff-Appellee,

v

Nos. 319152; 320852
Wayne Circuit Court
LC No. 13-001635-FC

TYRONE JOHNSON,

Defendant-Appellant.

Before: GLEICHER, P.J., and CAVANAGH and FORT HOOD, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of two counts of first-degree criminal sexual conduct (CSC) (victim under 13 years of age), MCL 750.520b(1)(a), production of child sexually abusive material, MCL 750.145c(2), and second-degree CSC (member of the same household and position of authority), MCL 750.520c(1)(b). He was sentenced, as a fourth habitual offender, MCL 769.12, to 17 ½ to 40 years' imprisonment for each first-degree CSC conviction, 3 to 20 years' imprisonment for the production of child sexually abusive material conviction, and 3 to 15 years' imprisonment for the second-degree CSC conviction, to be served concurrently. We affirm.

First, defendant claims that his trial counsel was ineffective for "opening the door" to testimony that he had a prior felony conviction. We disagree.

To preserve a claim of ineffective assistance of counsel, a defendant must make a motion for a new trial or an evidentiary hearing with the trial court. *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012). Defendant did not file a motion for a new trial or an evidentiary hearing in the trial court. Although defendant filed a motion to remand in this Court, it was denied. See *People v Johnson*, unpublished order of the Court of Appeals, entered October 14, 2014 (Docket Nos. 319152; 320852). Therefore, "this Court's review is limited to mistakes apparent from the record." *Heft*, 299 Mich App at 80.

Both the United States Constitution and the Michigan Constitution guarantee criminal defendants the right to effective assistance of counsel. US Const, Am VI; Const 1963, art 1, § 20. "To demonstrate ineffective assistance of counsel, a defendant must show that his or her attorney's performance fell below an objective standard of reasonableness under prevailing professional norms and that this performance caused him or her prejudice." *People v Nix*, 301

Mich App 195, 207; 836 NW2d 224 (2013), citing *People v Armstrong*, 490 Mich 281, 289-290; 806 NW2d 676 (2011). "To demonstrate prejudice, a defendant must show the probability that, but for counsel's errors, the result of the proceedings would have been different." *Nix*, 301 Mich App at 207.

First, defense counsel's performance did not fall below an objective standard of reasonableness. See *id*. It is presumed that trial counsel used effective trial strategy, and a defendant has a heavy burden to overcome this presumption. *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009). Defendant argues that even if counsel's actions were strategic, his strategy was not reasonable. However, this Court "will not substitute [its own] judgment for that of counsel on matters of trial strategy," nor will it "use the benefit of hindsight when assessing counsel's competence." *Id*. Rosalynd Moore's credibility was a significant issue at trial, and it was reasonable strategy for trial counsel to impeach her. Moore's testimony was important to identifying a key piece of evidence: a photograph from defendant's phone depicting defendant's hand touching the victim's vagina. Moore explained that she recognized the chair and cushion in the photograph from the house where she lived with defendant and the victim, along with other family members, located on Freeland Street in Detroit. She also knew it was the victim's nightgown in the picture and defendant's hand. Moore further testified that defendant essentially acknowledged guilt when she confronted him and that defendant said no one would believe her. Moore's testimony was significant because it corroborated the victim's testimony, which was sometimes inconsistent and unclear.

In addition, there is no evidence that defense counsel knew his questioning about Moore's misrepresentation to the state would lead to her testimony that defendant had a felony conviction. Defendant claims that counsel was warned by the court of the consequences of asking such questions. This warning allegedly occurred during a sidebar conference after the prosecutor objected to defense counsel's line of questioning. Indeed, in response to defendant's motion for a mistrial, the trial court said, "I told you when you were here at side bar, that you would bring it—if you opened the door, the Prosecutor got to walk through it." However, counsel had already asked Moore about the misrepresentations before the sidebar conference occurred. Consequently, he was not "warned" before asking Moore the questions. Moreover, defense counsel objected to the admission of testimony that defendant had a prior felony conviction. He argued that this information was irrelevant and more prejudicial than probative. Counsel also moved for a mistrial based on the testimony that defendant had a prior felony conviction. Only now, with the benefit of hindsight, is it evident that defense counsel's line of questioning led to Moore's testimony that defendant had a prior felony conviction.

Second, defendant has not shown he was prejudiced by his counsel's purported errors. The jurors heard that defendant had a prior felony conviction. They were not told what defendant's conviction was, so there was little risk that they convicted defendant because they believed he had a propensity to commit CSC. It is far more probable that the jury relied on the other evidence presented at trial. In particular, the photograph of a hand touching a vagina was shown to the jury and admitted into evidence. The victim testified that it was her vagina and defendant's hand in the photograph. She explained how the photograph came to be taken. Moore testified that she recognized the victim's nightgown and defendant's hand in the picture. The photograph was found on defendant's phone. The victim also testified that defendant had sex with her, put his finger in her vagina, and put his mouth on her vagina, beginning when she

was about 10 years old. Given the photograph, the victim's testimony, and Moore's testimony, defendant cannot show the probability that he was convicted because the jury knew he had a prior felony conviction.

Defendant next argues that he was denied a fair trial because the trial court did not allow the attorneys to participate in voir dire. Defendant further claims that his trial counsel was ineffective for failing to object to the trial court's error. We disagree.

"Generally, an issue is not properly preserved unless a party raises the issue before the trial court and the trial court addresses and decides the issue." *People v Cameron*, 291 Mich App 599, 617; 806 NW2d 371 (2011). Defendant did not raise this issue before the trial court. Therefore, it is unpreserved. Defendant also did not move for a new trial or an evidentiary hearing in the trial court, so his claim that his trial counsel was ineffective for failing to object during voir dire is also unpreserved. See *Heft*, 299 Mich App at 80.

This Court reviews for an abuse of discretion whether a trial court has conducted a voir dire sufficient to uncover potential juror bias. *People v Tyburski*, 445 Mich 606, 619; 518 NW2d 441 (1994). However, "[a]ppellate review of unpreserved constitutional claims is for plain error affecting the defendant's substantial rights." *People v King*, 297 Mich App 465, 472; 824 NW2d 258 (2012). Defendant must show that the plain error was outcome-determinative. *Id.* at 473. "Moreover, reversal is warranted only if the error resulted in the conviction of an innocent defendant or seriously affected the fairness, integrity, or public reputation of the judicial proceedings regardless of the guilt or innocence of the accused." *Id.* When an ineffective assistance of counsel claim is unpreserved, "this Court's review is limited to mistakes apparent from the record." *Heft*, 299 Mich App at 80.

"A defendant who chooses a jury trial has an absolute right to a fair and impartial jury. The purpose of voir dire is to elicit enough information for development of a rational basis for excluding those who are not impartial from the jury." *Tyburski*, 445 Mich at 618 (internal citations omitted). Voir dire is a defendant's only safeguard for ensuring an impartial jury. *Id.* However, a defendant does not have the right to individual, sequestered voir dire. *Id.* at 619. A defendant does not have the right to have his attorney conduct voir dire, nor the right to have the court ask questions submitted by his attorney. *Id.* Rather, "[t]he trial court has discretion in both the scope and conduct of voir dire." *Id.*; see also MCR 6.412(C).

"However, this Court has determined that where the trial court, rather than the attorneys, conducts voir dire, the court abuses its discretion if it does not adequately question jurors regarding potential bias so that challenges for cause, or even peremptory challenges, can be intelligently exercised." *Tyburski*, 445 Mich at 619, citing *Fedorinchik v Stewart*, 289 Mich 436, 438-439; 286 NW 673 (1939). "It is imperative, in securing the rights of the parties to an impartial jury, for the court to allow the elicitation of enough information so that the court itself can make an independent determination of a juror's ability to be impartial." *Tyburski*, 445 Mich at 620. Voir dire is important in soliciting information to allow the court and the parties to "discover hidden bias that would render a potential juror incompetent." *Id.* at 619.

First, the trial court did not plainly err in not allowing the attorneys to participate in voir dire. The primary focus of defendant's argument on this issue is that defendant was denied a fair

trial because the trial court conducted the voir dire itself and did not allow the attorneys to participate. Defendant asserts that "[o]nly the attorneys can make voir dire accomplish its intended purpose of revealing grounds for meaningful juror challenge" because "only the attorneys know the case that is about to be tried." He also argues that, by conducting the voir dire entirely by itself, the court "is eliminating any real opportunity for voir dire." However, it is well-settled that a defendant does not have the right to have his attorney conduct voir dire. See MCR 6.412(C)(2) ("[t]he court may conduct the examination of prospective jurors *or* permit the lawyers to do so") (emphasis added); *Tyburski*, 445 Mich at 619 ("[d]efendant does not have a right to have counsel conduct the voir dire").

Furthermore, the trial court's voir dire was adequate. Defendant contends that the questions asked by the court during voir dire "often elicited either a yes or a no, and very little, if any, explanation was ever allowed by the prospective jurors." However, defendant does not articulate what questions the trial court should have asked in addition to the questions it did ask. Defendant also does not point to the questioning of any specific juror that was inadequate and resulted in a potentially biased juror deciding his case. The trial court asked about the jurors' prior experiences and opinions, along with their ability to decide the case impartially and according to the law. When a potential juror said that a past experience or relationship might prevent him or her from deciding the case fairly, the court excused the individual.

Second, even if the court did err in not allowing the attorneys to participate in voir dire, or by not asking more specific questions during voir dire, defendant cannot show that this failure affected his substantial rights. Defense counsel did not object to the trial court's handling of voir dire. Counsel still exercised his peremptory challenges. It does not appear that he struggled because he lacked the information necessary to intelligently exercise his challenges. "Perhaps the most important criteria in selecting a jury include a potential juror's facial expressions, body language, and manner of answering questions." *People v Unger*, 278 Mich App 210, 258; 749 NW2d 272 (2008). Defense counsel still had the opportunity to view the potential jurors' facial expressions, body language, and general manner when they answered the questions posed by the trial court. There is no evidence that any of the jurors who decided defendant's case were biased. If they were, there is no evidence that such a bias would have been discovered through a more thorough voir dire.

Finally, defense counsel was not ineffective for failing to object to the way the trial court conducted voir dire. As discussed above, it is well-settled that a defendant does not have the right to have his attorney conduct voir dire. See MCR 6.412(C)(2); *Tyburski*, 445 Mich at 619. Trial counsel is not ineffective for failing to make a futile objection or advocate a meritless position. *People v Crews*, 299 Mich App 381, 401; 829 NW2d 898 (2013); *Payne*, 285 Mich App at 191. In addition, defendant cannot show that he was prejudiced by counsel's failure to object. See *Nix*, 301 Mich App at 207. There is no evidence that any of the jurors who decided defendant's case were biased.

Defendant next argues that there was insufficient evidence to support his convictions. We disagree.

"When reviewing challenges to the sufficiency of the evidence, this Court must view the evidence in the light most favorable to the prosecution and determine whether a rational trier of

fact could conclude that the prosecution proved all the essential elements of the crime beyond a reasonable doubt." *People v Johnson-El*, 299 Mich App 648, 651; 831 NW2d 478 (2013). This Court "must draw all reasonable inferences and examine credibility issues in support of the jury verdict" and "must not interfere with the jury's role as the sole judge of the facts." *People v Malone*, 287 Mich App 648, 654; 792 NW2d 7 (2010). "[T]he elements of an offense may be established on the basis of circumstantial evidence and reasonable inferences from the evidence[.]" *People v Dunigan*, 299 Mich App 579, 582; 831 NW2d 243 (2013). This Court will not "interfere with the jury's determinations regarding the weight of the evidence and the credibility of the witnesses." *Unger*, 278 Mich App at 222.

"The elements of CSC-1 under MCL 750.520b(1)(a) are that (1) the defendant engaged in sexual penetration with another person and (2) the other person was under 13 years of age." *People v Lockett*, 295 Mich App 165, 187; 814 NW2d 295 (2012). "Sexual penetration means sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of another person's body." *Id.*, quoting MCL 750.520a(r) (quotation marks omitted). "The elements of CSC–II are: (1) the defendant engaged in sexual contact, (2) with a person under 13 years of age." *People v Duenaz*, 306 Mich App 85, 106; 854 NW2d 531 (2014); see also MCL 750.520c(1)(a). Sexual contact includes "the intentional touching of the victim's or actor's intimate parts . . . for the purpose of sexual arousal or gratification, done for a sexual purpose, or in a sexual manner . . . ." MCL 750.520a(q).

First, defendant argues that "beyond the allegations made by the complaining witnesses," there was no direct or circumstantial evidence that defendant ever touched the victim in an "inappropriate manner, let alone . . . had sexual intercourse with her." However, a complaining witness's testimony alone is sufficient to support a defendant's conviction for CSC; there was no need for other evidence. See *People v Brantley*, 296 Mich App 546, 551; 823 NW2d 290 (2012). The victim testified that when she was 10 or 11 years old, defendant began having sexual intercourse with her, digitally penetrating her, and performing cunnilingus on her. She specifically testified that when she lived on Freeland, she and defendant had sexual intercourse and oral sex.

In addition, contrary to defendant's assertion, there was other evidence that defendant touched the victim inappropriately. The jury was shown a photograph of a hand touching a vagina; the photograph was admitted into evidence. The victim testified that it was her vagina and defendant's hand in the photograph. She explained how the photograph came to be taken. Moore testified that she recognized the victim's nightgown and defendant's hand in the picture. The photograph was found on defendant's phone. The photograph, along with the victim's and Moore's testimony, supports defendant's convictions of production of child sexually abusive material and second-degree CSC. It also bolsters the victim's credibility because it is evidence that defendant had touched her inappropriately.

Second, defendant argues there was insufficient evidence to convict him of first-degree and second-degree CSC because the victim did not testify to any specific dates that the sexual acts allegedly occurred. Generally, "[t]ime is not of the essence, nor is it a material element, in criminal sexual conduct cases involving a child victim." *People v Dobek*, 274 Mich App 58, 83; 732 NW2d 546 (2007); see also *People v Taylor*, 185 Mich App 1, 8; 460 NW2d 582 (1990). In

addition, "an imprecise time allegation [is] acceptable for sexual offenses involving children, given their difficulty in recalling precise dates." *People v Gaines*, 306 Mich App 289, 298-299; 856 NW2d 222 (2014), citing *People v Naugle*, 152 Mich App 227, 234 n 1; 393 NW2d 592 (1986).

In this case, "time was somewhat of the essence" because the charges against defendant were based on the victim being under 13 years old. See *Dobek*, 274 Mich App at 84. However, the trial court clearly instructed the jury that to establish the charge of first-degree CSC, the prosecution had to prove beyond a reasonable doubt that defendant engaged in a sexual act involving entry of his penis into the victim's genital opening when the victim was less than 13 years old. The victim testified that defendant began having sex with her, or putting his "private part" in her vagina, when she was 10 or 11 years old. She said this occurred more than once. Based on this testimony, a rational trier of fact could conclude that the prosecution proved defendant committed first-degree CSC two times. See *Johnson-El*, 299 Mich App at 651.

Third, defendant claims that there was no medical evidence of sexual activity between defendant and the victim. This is untrue. Dr. Dena Nazer, who conducted a physical examination of the victim, testified that the victim had a deep cleft in her hymen. Such a finding supports a child's disclosure that she has been sexually abused. In addition, the victim had a sexually transmitted disease (STD)—trichomonas vaginalis. Defendant claims that the victim could not have contracted this STD from defendant because it can only be transferred by sexual contact, and the victim testified that defendant always used a condom when they had sexual intercourse. Dr. Nazer did testify that trichomonas vaginalis is transferred by genital to genital contact. However, defendant misrepresents the record. The victim was never asked whether defendant used a condom each and every time defendant had sexual contact with her.

Finally, defendant contends that the victim's trial testimony was incredible and contradicted by her previous statements and preliminary examination testimony. Defendant also argues that Moore had a reason to be biased because she found evidence of defendant's "sexual tryst[s] with other woman [sic]." However, when this Court decides a challenge to the sufficiency of the evidence, this Court will not "interfere with the jury's determinations regarding the weight of the evidence and the credibility of witnesses." *Unger*, 278 Mich App at 222. Moore testified that she saw pictures of other women in defendant's cell phone, so the jury was aware of this fact and could consider it when deciding if she was a credible witness.

Affirmed.

/s/ Elizabeth L. Gleicher
/s/ Mark J. Cavanagh
/s/ Karen M. Fort Hood

-6-