# STATE OF MICHIGAN

# COURT OF APPEALS

---

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

AARON MATTHEWS,

        Defendant-Appellant.

UNPUBLISHED
May 11, 2017

No. 329444
Wayne Circuit Court
LC No. 15-003077-01-FC

---

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

MARCUS CARTER PERKINS,

        Defendant-Appellant.

No. 331827
Wayne Circuit Court
LC No. 15-003077-02-FC

---

Before: TALBOT, C.J., and K. F. KELLY and BORRELLO, JJ.

PER CURIAM.

Defendants were tried jointly, before a single jury. Defendant Matthews appeals as of right his jury trial convictions of second-degree murder, MCL 750.317, and obstruction of justice, MCL 750.505a. He was sentenced to 40 to 60 years' imprisonment for his second-degree murder conviction and 2 to 5 years' imprisonment for the obstruction of justice conviction. Defendant Perkins appeals as of right his jury trial convictions of first-degree murder, MCL 750.316(1)(a), possession of a firearm by a person convicted of a felony (felon-in-possession), MCL 750.224f, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. Defendant Perkins was sentenced to life-without-parole for his first-degree murder conviction, 29 to 60 months' imprisonment for his felon-in-possession conviction, and two years' imprisonment for his felony-firearm conviction. For the reasons set forth in this opinion, we affirm the convictions and sentences of defendants.

## I. BACKGROUND

Defendants were tried jointly for the events arising out of the death of Damon Roberts on February 22, 2015 in Detroit, Michigan. On that date, Kazak Perdue, Chris Perdue, and Roberts were hanging out at Chris's house when at some point, Kazak decided that he wanted to leave the house to go get "drinks" at a store just a few blocks away. Shortly after Kazak left the house, he heard Roberts say his name so Kazak turned around and saw Roberts walking about a block behind him. Despite Roberts calling his name, Kazak kept walking south on Queen Street toward Houston Whittier Street because he was trying to get to the store before it closed at 2:00 a.m.

Kazak noticed a silver SUV drive past him. Kazak explained that he noticed the SUV, in particular, because it had a headlight out. Shortly thereafter, he heard a "pop sound." Kazak turned around and saw who he believed was Roberts falling to the ground. Unsure of what happened and without a way to dial 911, Kazak continued walking toward the store so he could use a phone to dial 911. The store was already closed by the time Kazak got there, but he went to a nearby gas station off of Hayes Street and dialed 911.

Detroit Police Officers were dispatched to the intersection of Queen Street and Mayfield Street for "one shot fired." When they arrived, they observed a person, later identified as Roberts, lying in the street in a pool of blood. Roberts had suffered a shotgun injury to his head and would later die from the injury. A medical examiner's report concluded that the fatal shot was fired at close range.

At defendants' trial, the prosecution presented Lamont Parker as an eyewitness to the shooting. Parker testified that in the early hours of February 22, 2015, he was walking on Hayes Street toward Courville Street when a grey GMC SUV pulled up next to him. Parker recognized the vehicle as Aaron Matthews's vehicle because it had a "busted" taillight. When the vehicle stopped, Matthews rolled down the passenger side window and asked Parker if he wanted a ride. Parker replied that he would like a ride to his friend's house. According to Parker, Matthews was driving and Perkins was seated in the passenger's seat.

Parker told Matthews that he wanted to be dropped off at his friend's house near Kelly Road and Courville Street. However, when the SUV reached a split in the road where Matthews would need to turn in order to drop Parker off, Matthews continued driving on Hayes Street. Eventually, Matthews turned onto Queen Street where Parker noticed a man walking down the street with some bottles. Shortly thereafter, Matthews stopped the vehicle abruptly, which caused Parker's pack of cigarettes to fall from his lap onto the floor of the vehicle. Parker bent down to retrieve them and, when he sat up, he noticed Perkins outside of the vehicle.

According to his testimony, Parker saw Perkins standing approximately an arm's length away from Roberts. Perkins was holding a gun pointed at Roberts and Roberts had both hands held up in the air. Shortly thereafter, Parker saw Roberts drop to the ground. Parker did not hear a gunshot because the radio was turned up. At that point, Parker asked Matthews: "what the f*** is going on?" Matthews responded, "Chill out don't panic[;] I'm fen [sic] to drop you off and don't say nothing or we'll be back." Perkins returned to the vehicle and got in without saying anything and eventually dropped Parker off near his friend's house.

Defendants were convicted and sentenced as indicated above. This appeal then ensued.

-2-

## I. DOCKET NO. 329444

On appeal, Aaron Matthews argues that he is entitled to a new trial because the prosecution failed to present sufficient evidence at trial to prove beyond a reasonable doubt his conviction of second-degree murder under an aiding and abetting theory.

A defendant's challenge to the sufficiency of the evidence is reviewed de novo on appeal. *People v Meissner*, 294 Mich App 438, 452; 812 NW2d 37 (2011). When determining whether sufficient evidence was presented in a jury trial to support a defendant's conviction, we must review the evidence in a light most favorable to the prosecution and determine whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt. *People v Gaines*, 306 Mich App 289, 296; 856 NW2d 222 (2014). "Circumstantial evidence and reasonable inferences arising therefrom may be used to prove the elements of a crime." *People v Brantley*, 296 Mich App 546, 550; 823 NW2d 290 (2012). "All conflicts in the evidence must be resolved in favor of the prosecution." *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008).

The elements of second-degree murder are "(1) a death, (2) the death was caused by an act of the defendant, (3) the defendant acted with malice, and (4) the defendant did not have lawful justification or excuse for causing the death." *People v Smith*, 478 Mich 64, 70; 731 NW2d 411 (2007). "Malice is defined as the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and willful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm." *People v Bergman*, 312 Mich App 471, 487; 879 NW2d 278 (2015).

At trial, the prosecutor advanced the theory that Aaron Matthews was guilty of second-degree murder as an aider or abettor. A person who aids or abets the commission of a crime may be convicted and punished as if he directly committed the offense. MCL 767.39. "To support a finding that a defendant aided and abetted a crime, the prosecution must show that (1) the crime charged was committed by the defendant or some other person, (2) the defendant performed acts or gave encouragement that assisted the commission of the crime, and (3) the defendant [either] intended the commission of the crime or had knowledge that the principal intended its commission at the time he gave aid and encouragement[,]" *People v Izarraras-Placante*, 246 Mich App 490, 495-496; 633 NW2d 18 (2001) (citation omitted), "or, alternatively, that the charged offense was a natural and probable consequence of the commission of the intended offense," *People v Robinson*, 475 Mich 1, 15; 715 NW2d 44 (2006). "Aiding and abetting" describes all forms of assistance rendered to the perpetrator of a crime and comprehends all words or deeds that might support, encourage, or incite the commission of a crime. *People v Carines*, 460 Mich 750, 757; 597 NW2d 130 (1999); *People v Rockwell*, 188 Mich App 405, 411-412; 470 NW2d 673 (1991). "The quantum of aid or advice is immaterial as long as it had the effect of inducing the crime." *People v Lawton*, 196 Mich App 341, 352; 492 NW2d 810 (1992). An aider or abettor's state of mind may be inferred from all the facts and circumstances, including a close association between the defendant and the principal, the defendant's participation in the planning or execution of the crime, and evidence of flight after the crime. *Carines*, 460 Mich at 757; *People v Bennett*, 290 Mich App 465, 474; 802 NW2d 627 (2010).

Viewed in a light most favorable to the prosecution, the evidence was sufficient to show, first, that co-defendant Perkins shot Damon Roberts in the head, causing Roberts' death. Second, there was sufficient evidence presented that Matthews assisted his co-defendant Perkins' commission of the offense by (1) driving his SUV up to and abruptly stopping where Roberts was standing, (2) keeping the vehicle next to Roberts as Perkins exited the vehicle with a weapon, (3) waiting for Perkins to shoot Roberts in the head and return to the vehicle, (4) warning Parker to keep silent about the incident, (5) driving Perkins from the scene of the murder. Third, the evidence also was sufficient to show that Matthews knew and intended for Perkins to act with malice against Roberts. Parker testified that he did not hear either defendant speak to one another after he got inside the vehicle. Despite the silence and Parker clearly stating where he wanted to be dropped off, Matthews continued driving until Matthews' SUV reached Roberts. Although Matthews did not hold the firearm or pull the trigger of the firearm that killed Roberts, his actions enabled Perkins to kill Roberts. Additionally, Matthews's act of passing at least one person before stopping near Roberts demonstrates that this was not a random act; rather, a plan discussed and decided in advance of the killing. Moreover, Matthews's statement, "Chill out don't panic[;] I'm fen [sic] to drop you off and don't say nothing or *we'll be back*," was evidence that he was acting in concert with Perkins at the time of the shooting.

Based on this record evidence, it was reasonable for the jury to infer that Aaron Matthews not only performed acts to assist in the commission of the crime, but also intended the commission of the crime. Thus, the elements of the lesser-included offense, second-degree murder, were met because the record evidence supports a finding beyond a reasonable doubt that Matthews acted with the intent to kill Damon Roberts when Matthews stopped the SUV thereby setting the stage for Perkins to shoot Roberts. See *Smith*, 478 Mich at 70; *Carines*, 460 Mich at 759. Accordingly, sufficient evidence existed to support defendant Matthews's second-degree murder conviction under an aiding and abetting theory and Matthews is not entitled to relief. *Izarraras-Placante*, 246 Mich App at 495-496.

## II.  DOCKET NO. 331827

## A.  PROSECUTORIAL MISCONDUCT

On appeal, Marcus Perkins argues that the prosecutor committed misconduct when she improperly commented and elicited information regarding his pretrial incarceration, and appealed to the jurors' sympathy by calling Perkins a "violent felon" and encouraged the jurors to consider his in-court demeanor in making their credibility determination.

A defendant must "contemporaneously object and request a curative instruction" to preserve an issue of prosecutorial misconduct for appellate review. *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). Defense counsel objected to the prosecutor's closing argument when she argued that the jurors were privy to Perkins's in-court demeanor; therefore, with respect to this alleged error, the issue is preserved for appellate review. However, because defense counsel did not raise any other objections by timely and specifically objecting to the prosecutor's comments during trial, the remaining alleged errors are unpreserved for appellate review. See *id*.

"Generally, a claim of prosecutorial misconduct is a constitutional issue that is reviewed de novo, but a trial court's factual findings are reviewed for clear error." *People v Brown*, 279 Mich App 116, 134; 755 NW2d 664 (2008). However, we review unpreserved claims of prosecutorial misconduct for plain error affecting substantial rights. *Gaines*, 306 Mich App at 308. In order to show plain error, defendant must establish "(1) that an error occurred, (2) that the error was plain, and (3) that the plain error affected defendant's substantial rights." *People v Kowalski*, 489 Mich 488, 506; 803 NW2d 200 (2011). Generally, the "third prong requires a showing of prejudice, which occurs when the error affected the outcome of the lower court proceedings." *People v Putman*, 309 Mich App 240, 243; 870 NW2d 593 (2015). Even if a defendant satisfies all three requirements, appellate reversal is warranted only when the plain error "resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Kowalski*, 489 Mich at 506 (quotation marks and citation omitted).

"The test of prosecutorial misconduct is whether the defendant was denied a fair and impartial trial." *Brown*, 279 Mich App at 134. The defendant bears the burden of establishing that such an error occurred, which resulted in a miscarriage of justice. *Id*. "[A]llegations of prosecutorial misconduct are considered on a case-by-case basis, and the reviewing court must consider the prosecutor's remarks in context." *Bennett*, 290 Mich App at 475. More specifically, we evaluate a prosecutor's comments "in light of defense counsel's arguments and the relationship of these comments to the admitted evidence." *People v Seals*, 285 Mich App 1, 22; 776 NW2d 314 (2009).

A prosecutor is generally given "great latitude regarding his or her arguments and conduct at trial," *People v Fyda*, 288 Mich App 446, 461; 793 NW2d 712 (2010), and is not required to confine his or her argument "to the blandest possible terms," *People v Dobek*, 274 Mich App 58, 66; 732 NW2d 546 (2007). Moreover, "[c]urative instructions are sufficient to cure the prejudicial effect of most inappropriate prosecutorial statements." *Seals*, 285 Mich App at 22. "Jurors are presumed to follow their instructions, and instructions are presumed to cure most errors." *People v Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003).

## 1. PRETRIAL INCARCERATION

A prosecutor's references to a defendant's incarceration are generally inadmissible. *People v Spencer*, 130 Mich App 527, 537; 343 NW2d 607 (1983). Moreover, a prosecutor's intentional elicitation of testimony regarding a defendant's previous incarceration constitutes error. *People v McGee*, 90 Mich App 115, 116-117; 282 NW2d 250 (1979). However, "an isolated or inadvertent reference to a defendant's prior criminal activities will not result in reversible prejudice." *People v Wallen*, 47 Mich App 612, 613; 209 NW2d 608 (1973).

Perkins first challenges the following statement made by the prosecutor during her opening statement:

> And eventually you are going to hear that Mr. Parker did go to the police and the reasons that he eventually went to the police is that *these two defendants were locked up*. [Emphasis added.]

Perkins next challenges the following exchange between the prosecutor and Parker on the basis of improperly eliciting evidence of his incarceration for unrelated crimes:

> [*Prosecutor*]:  What made you um, willing to tell and not be afraid at that point in time?
>
> [*Parker*]:  Well, they was [sic] *incarcerated* for one, and I just had to get it off my chest.
>
> [*Prosecutor*]:  Okay.  So by the time you tell the police what you saw *are they both locked up to your knowledge*?
>
> [*Parker*]:  Correct.  [Emphasis added.]
>
> * * *
>
> [*Prosecutor*]:  Did it make it easier for you to make that decision knowing that *these two gentlemen were locked up*?
>
> [*Parker*]:  Kind of[,] but you know I got siblings out here so I got to be careful.  [Emphasis added.]

We begin our analysis by noting that this is not a case where a prosecutor asked an unrelated question which elicited a surprise response from a witness revealing a defendant's incarceration.  Rather, it was the prosecutor who divulged defendant's incarceration, and she did so numerous times.  However, the record divulges that the prosecutor thought she had legitimate reasons to bring up defendant's pre-trial incarceration.  First, the prosecutor believed there was an issue as to why and when Parker came forward with his eyewitness testimony.  The implication was that Parker, fearing retribution by defendants, went to the police only after defendants had been incarcerated.  However, even if true, the record is, at best, unclear as to the necessity of the State introducing defendants' incarceration.[1]  Hence, in the absence of any argument or showing on appeal as to the necessity of this line of questioning, we find that the prosecutor improperly referenced defendant Perkins's pretrial incarceration.

The next issue then becomes whether such improper references warrant reversal. Remarks are improper and constitute prosecutorial misconduct requiring reversal when they deprive defendant of a fair and impartial trial.  *People v Watson*, 245 Mich App 572, 594; 629 NW2d 411 (2001).  We evaluate prosecutor comments "in context," "in light of defense arguments," and in relation to the evidence.  *Brown*, 267 Mich App at 152.  Here, the nature of the statements regarding defendants' pre-trial incarceration did not disclose the nature of the charges against defendants, nor did the comments reveal that any charges in addition to the ones for which defendants were currently on trial were the impetus for their pre-trial incarceration.

---

[1] The State's brief on appeal erroneously framed this issue as one involving the prosecutor suggesting that defendants had committed other crimes.

However, it is our examination of the prosecutor's improper remarks in relation to the evidence presented which leads us to make a finding that defendant is not entitled to a new trial on this issue. In this matter, the jury heard testimony from an alleged eyewitness who testified that he watched Perkins shoot the victim in the head at close range. The testimony of the eyewitness was collaborated by the medical examiner who affirmed that the fatal shot was fired at close range. Moreover, any prejudice defendant might have suffered was remediated by the trial court's subsequent instruction that "[t]he lawyers' statements and arguments and any commentary are not evidence. . . ." "Jurors are presumed to follow instructions, and instructions are presumed to cure most errors." *People v Petri*, 279 Mich App 407, 414; 760 NW2d 882 (2008). In the absence of any evidence to the contrary, we must presume that the jurors followed the trial court's instructions and refused to consider the prosecution's improper argument as evidence against defendant. Accordingly, defendant is not entitled to relief on this issue.

## 2. APPEAL TO THE JURY'S SYMPATHY

"Appeals to the jury to sympathize with the victim constitute improper argument." *Watson*, 245 Mich App at 591. Although a prosecutor may not argue facts unsupported by the evidence or mischaracterize the evidence presented, the prosecutor may argue reasonable inferences from the evidence. *Id*. at 588.

Defendant Perkins challenges the following statements made by the prosecutor during her opening statement:

> And lastly, I'm going to tell you you [sic] are also going to hear evidence *with regards to Mr. Perkins that he is a convicted felon*.

> And you are going to hear that evidence and it is important that you use that evidence only for the purpose that it is introduced.

> And in other words *the law does not permit me to argue to you well he must have done it he's a violent felon*. The purpose of that evidence is not to show that he committed the crime of murder or aiding and abetting of the murder it's to show that he possessed a firearm when he lawfully did not have the right to do so. [Emphasis added.]

Additionally, defendant Perkins argues that the prosecutor infected unfairness in his trial when the prosecutor, during her closing argument, encouraged the jury to look at defendant Perkins's in-court demeanor.

On the issue of the prosecutor informing the jury that Perkins was a felon, defendant fails to demonstrate that an error occurred. A prosecutor may make comments and arguments in light of the admitted evidence at trial. *Seals*, 285 Mich App at 22. Perkins was charged with felon-in-possession, which requires the prosecution to prove that the defendant possessed a firearm while ineligible to do so under MCL 750.224f as a result of a prior felony conviction. MCL 750.224f; see also *People v Perkins*, 262 Mich App 267, 269-270; 686 NW2d 237 (2004), abrogated in part on other grounds by *People v Smith-Anthony*, 494 Mich 669 (2013). To establish that the prior felony conviction element was met, a stipulation was entered during trial that defendant Perkins had, indeed, been previously convicted of a felony. In light of this admitted evidence, the

prosecutor properly commented and explained that she did not have to argue or prove defendant Perkins was a "violent felon" in order to support this element. Because the prosecutor's comments accurately stated the evidence later admitted at trial, there is no error. However, even if the prosecutor's comments were considered an error, the trial court's instructions were sufficient to cure any potential prejudicial effect. *Seals*, 285 Mich App at 22.

The question of whether it was proper for the prosecution to comment on defendant Perkins's in-court demeanor is not as clear. However, it is unnecessary to determine whether the prosecutor's argument exceeded the bounds of a permissible argument because defendant Perkins is unable to show that a miscarriage of justice occurred. *Brown*, 279 Mich App at 134. The central issue at trial was the credibility of Parker's identification of defendant Perkins as the shooter and not whether defendant Perkins demonstrated a consciousness of guilt by his in-court demeanor. As discussed in more detail below in Part II(B)(1), Parker's identification testimony was supported by other evidence admitted at trial. Additionally, the trial court instructed the jurors not to let sympathy or prejudice influence their decision, and not to consider the lawyers' statements and arguments as evidence when making a decision. These instructions were sufficient to cure any potential prejudicial effect of any alleged error, and defendant Perkins fails to rebut the presumption that the jury followed the trial court's instructions. See *Petri*, 279 Mich App at 414. Accordingly, defendant Perkins has failed to establish that he was denied a fair and impartial trial as a consequence of prosecutorial misconduct. See *Brown*, 279 Mich App at 134.

## B. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant Perkins, in his Standard 4 brief, argues that defense counsel was ineffective for failing to (1) investigate and present a police interrogation tape of Parker to use for impeachment purposes, and (2) investigate and present two alibi witnesses at trial.

An ineffective assistance of counsel claim is a mixed question of fact and constitutional law. *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). We review a trial court's findings of fact for clear error, and questions of constitutional law de novo. *Id*. "A finding is clearly erroneous if the reviewing court is left with a definite and firm conviction that a mistake has been made." *Lopez*, 305 Mich App at 693 (citation and quotation marks omitted). When a claim of ineffective assistance of counsel is unpreserved for appellate review, our review is limited to errors apparent on the record. *Id*. "If the record does not contain sufficient detail to support defendant's ineffective assistance claim, then he has effectively waived the issue." *People v Davis*, 250 Mich App 357, 368; 649 NW2d 94 (2002).

Criminal defendants have a right to effective assistance of counsel under both the United States and Michigan Constitutions. US Const, Am VI; Const 1963, art 1, § 20. To prevail on an ineffective assistance of counsel claim, defendant must show: (1) that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms, and (2) that there is a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. *People v Vaughn*, 491 Mich 642, 669; 821 NW2d 288 (2012) (citation and quotation marks omitted). "Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *Eisen*, 296 Mich App at 329 (quotation marks and citation omitted). Additionally, a defendant's burden includes the burden of persuasion in establishing a factual predicate for his claim. *Putman*, 309 Mich App at 248.

## 1. IMPEACHMENT EVIDENCE

"Trial counsel is responsible for preparing, investigating, and presenting all substantial defenses." *People v Chapo*, 283 Mich App 360, 371; 770 NW2d 68 (2009). A substantial defense is one that could have made a difference in the trial's outcome. *Id*. More specifically, trial counsel has a "duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Trakhtenberg*, 493 Mich at 53. However, trial counsel is presumed to implement sound trial strategy, *Gaines*, 306 Mich App at 310, and we "will not substitute our judgment for that of counsel on matters of trial strategy, nor will we use the benefit of hindsight when assessing counsel's competence," *People v Unger*, 278 Mich App 210, 242-243; 749 NW2d 272 (2008).

On this issue, Perkins argues that the production of the alleged interrogation tape would have revealed that Parker did not volunteer information; rather, the police coerced Parker into naming defendant Perkins as the shooter to exculpate himself from criminal liability. In support of his argument, Perkins relies on a written police report containing Parker's statements wherein the "interrogation" box of the form was marked and not the "interview" box. Defendant Perkins's reliance on the police report is an improper attempt to expand the record on appeal as the report was not admitted as evidence below. Thus, we may decline to consider it as evidentiary support for the issue. See *People v Williams*, 241 Mich App 519, 524; 616 NW2d 710 (2000) ("[P]arties cannot enlarge the record on appeal . . . .") However, even if we were to consider the police report as evidentiary support for the issue, defendant Perkins fails to produce any evidence that an interrogation tape exists, that defense counsel did not investigate the existence of an interrogation tape, and that Parker was coerced into identifying defendant Perkins as the shooter. Additionally, record evidence reveals that defense counsel seized the opportunity to cross-examine Parker regarding his testimony. Hence, even assuming evidence of an interrogation tape exists, defense counsel could have simply decided the evidence was unnecessary, which is a decision we will not second-guess. *Unger*, 278 Mich App at 242-243. Accordingly, defendant is not entitled to relief on this issue.

## 2. EXCULPATORY ALIBI WITNESSES

Trial counsel's decision whether to call a witness at trial is presumed to be sound trial strategy. *Meissner*, 294 Mich App at 460. Generally, "the failure to call a witness can constitute ineffective assistance of counsel only when it deprives the defendant of a substantial defense." *People v Payne*, 285 Mich App 181, 190; 774 NW 2d 714 (2009) (quotation marks and citation omitted). In other words, only when a defendant can demonstrate that the witness testimony could have made a difference in the trial's outcome. See *Chapo*, 283 Mich App at 371.

On this issue, Perkins argues that had Maria Perkins and Michelle Solomon testified, they would have absolved him of criminal liability because Maria would have testified that he was at home, drunk and asleep, on the night of the incident, and Solomon would have testified that Perkins was always home before midnight. The record is devoid of any mention of either witness. In an improper attempt to expand the record on appeal, defendant Perkins attaches a self-executed affidavit as well as an affidavit executed by his appellate counsel. We may decline to consider these affidavits as evidentiary support for the issue. See *Williams*, 241 Mich App at 524 ("[P]arties cannot enlarge the record on appeal by the use of affidavits.") However, even if

we were to consider the affidavits as evidentiary support, appellate counsel states that he was unable to locate Maria and Solomon to obtain affidavits from them, and that when he was able to speak with them on the phone, neither witness recalled particular details of the night of the incident. Thus, Perkins has failed to establish a factual predicate for his claim, and thus, fails to overcome the presumption that defense counsel provided effective assistance of counsel. See *Putman*, 309 Mich App at 248. Similarly, Perkins fails to demonstrate that their testimony would have made a difference in the outcome of the trial in light of their inability to recall details from the night of the incident. Accordingly, there are no mistakes apparent from the record, and thus, defendant Perkins is not entitled to a remand or a new trial on the basis of ineffective assistance of counsel.

Affirmed.

/s/ Michael J. Talbot
/s/ Kirsten Frank Kelly
/s/ Stephen L. Borrello