# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DONTREAU VON ROBINSON,

        Defendant-Appellant.

UNPUBLISHED
July 13, 2017

No. 331680
Monroe Circuit Court
LC No. 15-041781-FC

Before: O'BRIEN, P.J., and JANSEN and STEPHENS, JJ.

PER CURIAM.

Defendant, Dontreau Von Robinson, was convicted by a jury of armed robbery, MCL 750.529, first-degree home invasion, MCL 750.110a(2), and assault with intent to murder, MCL 750.83, and sentenced to concurrent prison terms of 30 to 80 years for the armed robbery conviction, 13 to 20 years for the first-degree home invasion conviction, and 30 to 80 years for the assault with intent to murder conviction. We affirm.

At approximately 7:30 p.m. on January 9, 2015, three men broke into Samantha and Christopher Smith's home armed with handguns. During the break-in, Christopher was shot once in the side of his torso and once in the arm. After being shot, Christopher was held at gunpoint for anywhere between 10 and 20 minutes while the other two men searched the home. During the altercation between the men and Christopher, Samantha, who was upstairs with their two young children, came downstairs to see what was happening. As she made her way downstairs, one of the other individuals grabbed her as well, and both she and Christopher were subdued while at least one of the individuals continued searching the home. According to the Smiths, the individuals stole approximately $200 in cash, a video-game system, some fake jewelry, a laptop, and a safe. Once they found the safe, which was apparently what they were searching for, the intruders attempted to duct-tape Samantha up and left Christopher, who was suffering significant blood loss at the time, in the bathroom and tried to tie the bathroom door closed. Eventually, the intruders left the home, Samantha ensured that the children were safe, and Christopher was able to make it to a neighbor's home to call 911. Thankfully, Samantha and the children were, generally speaking in light of the circumstances, unharmed, and Christopher was able to receive the necessary medical treatment. Defendant was identified as one of the intruders, was arrested, and was charged with the crimes set forth above. At trial, defendant testified on his own behalf, asserting, in relevant part, that he was uninvolved in the crimes at issue. A jury convicted him as a charged, and defendant was sentenced as set forth above.

On appeal, defendant first argues that the prosecution presented insufficient evidence to prove that he was "one of the perpetrators." We disagree.

> Claims of insufficient evidence in a criminal case are reviewed de novo, with the evidence viewed in a light most favorable to the prosecution. *People v Ericksen*, 288 Mich App 192, 195-196; 793 NW2d 120 (2010). We must determine whether a rational trier of fact could have found that all the essential elements of the offenses were proved beyond a reasonable doubt. *People v Railer*, 288 Mich App 213, 217; 792 NW2d 776 (2010). Circumstantial evidence and reasonable inferences arising therefrom may be used to prove the elements of a crime. *People v Bennett*, 290 Mich App 465, 472; 802 NW2d 627 (2010). "[T]his Court must not interfere with the jury's role as the sole judge of the facts." *People v Meshell*, 265 Mich App 616, 619; 696 NW2d 754 (2005). It is the role of the jury to " 'determine questions of fact and assess the credibility of witnesses.' " *People v Cameron*, 291 Mich App 599, 616; 806 NW2d 371 (2011), quoting *People v Lemmon*, 456 Mich 625, 637; 576 NW2d 129 (1998). [*People v Brantley*, 296 Mich App 546, 550; 823 NW2d 290 (2012).]

" '[I]dentity is an element of every offense.' " *People v Bass*, 317 Mich App 241, 263; 893 NW2d 140 (2016), quoting *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008). "[T]his Court has stated that positive identification by witnesses may be sufficient to support a conviction of a crime." *People v Davis*, 241 Mich App 697, 700; 617 NW2d 381 (2000).

Applying those rules to the facts of this case, it is quite apparent that the prosecution presented sufficient evidence to establish defendant as one of the perpetrators beyond a reasonable doubt. Christopher expressly testified that defendant held him at gunpoint during the robbery, home invasion, and assault. Specifically, Christopher testified that he recognized defendant's face and voice. In fact, when questioned whether there was "any question in [his] mind that it was Dontreau Robinson who was one of the three assailants[,]" Christopher answered, in relevant part, as follows: "There is no question. I know it was him." Similarly, Samantha identified defendant as one of the perpetrators shortly after the crimes were committed using a photograph supplied by her brother. In fact, much like her husband, she expressed little doubt when identifying defendant as one of the perpetrators: "I knew without a doubt 100 percent that it was him." This testimony was sufficient for the jury to conclude that defendant was one of the perpetrators. *Davis*, 241 Mich App at 700. While defendant correctly notes that he denied being involved, his denial, alone, does not alter our conclusion. At best, the conflicts between the Smiths' and his testimony created a credibility determination for the jury, and the jury obviously found the Smiths' testimony more credible in light of its verdict. We will not usurp the jury's role in that regard. See *Brantley*, 296 Mich App at 550; see also *People v Daniels*, 172 Mich App 374, 378; 431 NW2d 846 (1988) ("The credibility of the identification testimony was a matter for the trial court, as the trier of fact, to decide. We will not resolve it anew."). Therefore, we conclude that there was sufficient evidence to support the jury's conclusion that defendant was one of the perpetrators.

Next, defendant argues that the trial court erred by admitting a Facebook video of defendant "displaying both of the weapons allegedly used [by defendant] to commit the offenses." We disagree.

"We review for an abuse of discretion a trial court's decision to admit or exclude evidence," while reviewing de novo any preliminary legal questions regarding admissibility. *People v Mann*, 288 Mich App 114, 117; 792 NW2d 53 (2010). "An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *People v Mahone*, 294 Mich App 208, 212; 816 NW2d 436 (2011). "[A] trial court's decision on a close evidentiary question ordinarily cannot be an abuse of discretion." *People v Cameron*, 291 Mich App 599, 608; 806 NW2d 371 (2011) (quotation marks and citation omitted). [*Bass*, 317 Mich App at 255-256.]

Here, defendant specifically argues that the Facebook video was irrelevant and unfairly prejudicial. " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. Relevant evidence is admissible; irrelevant evidence is not. MRE 402. "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." MRE 403. MRE 403 does not prohibit prejudicial evidence; rather, it prohibits evidence that is *unfairly* prejudicial. *People v Mardlin*, 487 Mich 609, 614-616; 790 NW2d 607 (2010). In essence, evidence is unfairly prejudicial when there exists a danger that marginally probative evidence might be given undue weight by the jury. *People v Feezel*, 486 Mich 184, 198; 783 NW2d 67 (2010).

Applying those rules to the facts of this case, we conclude that the Facebook video was relevant and not unfairly prejudicial. First, as recognized by the trial court, the video was relevant to the jury's credibility determination with respect to defendant's testimony. Defendant testified that he was not involved in the crimes at issue and that he had not possessed a handgun on January 9, 2015. The video, which reflects defendant possessing a handgun and stating that "[w]e at the crazy horse, January 9th, man 2015," contradicted his testimony that he had not possessed a handgun, and it is that contradiction that would likely impact whether the jury believed or disbelieved defendant's testimony that he was not involved in the crimes at issue. In our view, the video's probative value was significant for that reason. On the other hand, we cannot agree that the video was unfairly prejudicial as defendant claims. He asserts that the video served as "evidence that [defendant] was in a video holding a gun allegedly of the same caliber used to shoot [Christopher] and recorded the same [Christopher] was shot[.]" However, the fact that defendant, who had denied possessing a handgun just moments before the video was admitted, possessed a handgun that one witness believed was identical to one of the handguns used during the crimes at issue is significantly probative for the same reason that it is prejudicial; that is, it is both probative and prejudicial because it supports one witness's testimony and contradicts that of another. Consequently, while it is true that one witness opined that the handgun in the video was the same as one that was used during the crimes at issue, it is equally true that defendant denied that fact in his testimony, instead stating that Christopher "was shot with a 9 millimeter," not "a .40 caliber" like the handgun in the video. Therefore, we conclude that the trial court did not abuse its discretion by admitting the video because it was relevant and was not unfairly prejudicial.

Relatedly, defendant also argues that the Facebook video should have been suppressed because the prosecution failed to disclose it to the defense during discovery. He claims, "The prosecution got to have its cake and eat it too- they withheld the statement until the last minute and still got to use it in trial without the defense having adequate time to prepare to defend against the undisclosed evidence." We disagree.

"Discovery in a criminal case is governed by MCR 6.201." *People v Bosca*, 310 Mich App 1, 27; 871 NW2d 307 (2015). At issue in this case is MCR 6.201(B)(3), which requires that a prosecutor, "[u]pon request," "provide each defendant" "any written or recorded statements, including electronically recorded statements, by a defendant, codefendant, or accomplice pertaining to the case, even if that person is not a prospective witness at trial[.]" Generally, the prosecutor is required to comply with such a request within 21 days. See MCR 6.201(F).

> If a party fails to comply with the rule, the court, in its discretion, may order the party to provide the discovery or permit the inspection of materials not previously disclosed, grant a continuance, prohibit the party from introducing in evidence the material not disclosed, or enter such other order as it deems just under the circumstances. Parties are encouraged to bring questions of noncompliance before the court at the earliest opportunity. Wilful violation by counsel of an applicable discovery rule or an order issued pursuant thereto may subject counsel to appropriate sanctions by the court. An order of the court under this section is reviewable only for abuse of discretion. [MCR 6.201(J).]

When exercising its discretion in this regard, the trial court should consider any applicable circumstances, including, for example, "a balancing of interests of the courts, the public, and the parties" as well as "the causes and bona fides of tardy, or total, noncompliance, and a showing by the objecting party of actual prejudice." *People v Davie (After Remand)*, 225 Mich App 592, 598; 571 NW2d 229 (1997).

Applying those rules to the facts of this case, we are of the view that the trial court correctly addressed defendant's objection to the admission of the Facebook video. At the outset, we feel compelled to take issue with defendant's trial counsel's and appellate counsel's characterization of the prosecution's failure to disclose the video during discovery as being the product of bad faith. Both counsels asserted that the prosecution withheld the statement and used it as a surprise at trial, but the record simply does not support such an assertion. The first mention of the video was made during direct- and cross-examination of a witness, and, once that witness's testimony was complete, the prosecutor immediately denied any knowledge of the existence of this video, stating, in relevant part, "I think this is the first I've heard about it." Defendant's trial counsel, on the other hand, admitted that he was aware of the existence of the video: "Judge, I want to state for the record there is nothing in any of the police reports about this video that the witness told us about. *I do believe that [the prosecutor] told me that there was a video of my guy waiving a gun around. . . .*" (Emphasis added.) Defense counsel later clarified that it may have been a police officer, not the prosecutor, who told him about the video, but we deem it important to clarify that the record reflects that the defense, even more so than the prosecutor, was aware of the existence of the video before trial. In fact, we cannot overlook the fact that the video was apparently found on *defendant's* Facebook page. Consequently, one might infer that defendant was aware of it. In any event, even if we ignore these implicit

weaknesses in defendant's argument, we ultimately find it meritless for other reasons. First, defendant's argument on appeal conveniently overlooks the fact that MCR 6.201(B) provides that a prosecutor must provide defendant's statements *upon request*. Furthermore, when addressing defendant's trial counsel's motion to suppress the video, the trial court considered a variety of factors in reaching its decision, including, for example, the probative value of the evidence, the reason that the prosecutor failed to disclose the video, and the fact that the parties and the trial court were able to review the video before it was played to the jury. Therefore, while we do not intend to justify the fact that defense counsel was never provided this video prior to trial, we simply do not agree that the admission of this video, alone, requires reversal.

Additionally, defendant argues that the prosecution presented insufficient evidence to prove that he intended to murder Christopher during the robbery, home invasion, and assault. We disagree.

> We review de novo a challenge on appeal to the sufficiency of the evidence. *People v Hawkins*, 245 Mich App 439, 457; 628 NW2d 105 (2001). The elements of assault with intent to commit murder are "(1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder." *People v Brown*, 267 Mich App 141, 147-148; 703 NW2d 230 (2005) (quotation marks and citations omitted). We examine the evidence in a light most favorable to the prosecution, resolving all evidentiary conflicts in its favor, and determine whether a rational trier of fact could have found that the essential elements of the crime were proved beyond reasonable doubt. *Hawkins*, 245 Mich App at 457; *People v Terry*, 224 Mich App 447, 452; 569 NW2d 641 (1997). [*People v Ericksen*, 288 Mich App 192, 195-196; 793 NW2d 120 (2010).]

Defendant's argument on appeal focuses on his claim that "[t]here is no direct evidence that [Christopher] was shot with an actual intent to kill." "Because of the difficulty of proving an actor's state of mind, minimal circumstantial evidence is sufficient." *People v McRunels*, 237 Mich App 168, 181; 603 NW2d 95 (1999). "Circumstantial evidence and the reasonable inferences it permits are sufficient to support a conviction, provided the prosecution meets its constitutionally based burden of proof beyond a reasonable doubt." *Ericksen*, 288 Mich App at 196, citing *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000).

Applying those rules to the facts of this case, we conclude that the prosecution presented sufficient evidence to establish that defendant intended to kill Christopher. Defendant, as well as another perpetrator, fired a handgun at Christopher as soon as they entered the home and saw him. One of the bullets hit Christopher in the side of his torso, causing him to lose a significant amount of blood at the scene. After shooting him, defendant stood over him, holding him at gunpoint, for several minutes. He then ordered him, still at gunpoint, to move into the bathroom despite the obvious blood loss and Christopher's pleas to stay on the ground. Once Christopher was in the bathroom, defendant and the other intruders attempted to tie them inside, which, had they been successful, would have further delayed Christopher's efforts to obtain necessary medical assistance. Reviewing this evidence in a light most favorable to the prosecution, we are of the view that a rational trier of fact could have concluded that defendant intended to kill Christopher. *Ericksen*, 288 Mich App at 196-197. Indeed, a defendant's intent can be inferred from all the evidence presented, and the nature of Christopher's wounds, the weapon used, and

-5-

defendant's actions after shooting Christopher all support a conclusion that defendant maintained an intent to kill. *Id*. at 196. Therefore, we conclude that there was sufficient evidence to support the jury's conclusion that defendant intended to kill Christopher.

Lastly, in a pro se brief filed pursuant to Administrative Order No. 2004-6, Standard 4, defendant argues that he was deprived of his constitutional right to the effective assistance of counsel because his trial counsel promised that the charges would be dismissed if he passed a polygraph examination. Specifically, defendant claims, in relevant part, as follows:

> The prosecution used unsavory and prejudicial tactics in order to gain a conviction. The instant case was bound over for trial on false pretenses. Trial counsel convinced Mr. Robinson to take a polygraph examination in order to clear his name. Counsel advised that if he took and passed a polygraph examination that the prosecution guaranteed that no charges would be pursued in the matter at hand. Mr. Robinson then took and passed the polygraph examination. (Pretrial Hearing April 10 2015, pg 7). This was a pledge of public faith -- a promise by by [sic] state officials -- and one that should not be lightly disregarded. *People v Reagan*, 395 Mich. 306; 235 N.W. 2d 581 (1975). Unfortunately Mr. Robinson was ill advised by counsel because the prosecution down played the polygraph as an inconvenience and minor matter . . . .

This argument is meritless.

Defendant's argument mixes the concepts of ineffective assistance of counsel and prosecutorial error. "A defendant's ineffective assistance of counsel claim 'is a mixed question of fact and constitutional law.' When reviewing an ineffective assistance of counsel claim, this Court reviews for clear error the trial court's findings of fact and reviews de novo questions of law." *People v Shaw*, 315 Mich App 668, 671-672; 892 NW2d 15 (2016), quoting *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). "To establish ineffective assistance of counsel, a defendant must show (1) that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms and (2) that there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different." *Id*. at 672. "To prevail on a claim of prosecutorial error, a defendant must demonstrate that he or she was 'denied a fair and impartial trial.' " *Bosca*, 310 Mich App at 26, quoting *People v Brown*, 294 Mich App 377, 382; 811 NW2d 531 (2011). Constitutional issues, including whether a defendant was denied a fair and impartial trial, are reviewed de novo. *Id*. at 26-27.

> "Where a defendant fails to object to an alleged prosecutorial impropriety, the issue is reviewed for plain error." A plain error is one that is 'clear or obvious,' and the error must affect the defendant's "substantial rights." That is, the defendant must have been prejudiced by the plain error. "Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings independent of defendant's innocence." [*People v Cooper*, 309 Mich App 74, 88-89; 867 NW2d 452 (2015) (citations omitted; alteration by the *Cooper* Court).]

Applying those rules to the facts of this case, we are unable to find anything in the record that supports defendant's ineffective-assistance and prosecutorial-error claims. The only references to a polygraph examination in the record were made during an argument regarding bond. Defendant's trial counsel argued that "a reasonable bond" was appropriate because defendant had family support, because he was attending college at the time the crimes were committed, because "there's no physical evidence linking him to this offense," "[a]nd also, and while this doesn't have any evidentiary value, and we understand that, he did pass a polygraph." The prosecutor responded, "tak[ing] exception to counsel's reference to the polygraph test in this matter as . . . any sort of basis towards a reduction in the bond" and "tak[ing] exception to the fact that defendant passed it as if it was some sort of a pass/fail test." This exchange, alone, is simply insufficient to warrant relief. "[D]efendant has the burden of establishing the factual predicate for his claim[.]" *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999). Stated differently,

> "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998). "The appellant himself must first adequately prime the pump; only then does the appellate well begin to flow. Failure to brief a question on appeal is tantamount to abandoning it." *Mitcham v Detroit*, 355 Mich 182, 203; 94 NW2d 388 (1959) (citations omitted). [*People v Henry*, 315 Mich App 130, 148-149; 889 NW2d 1 (2016).]

Because nothing in the record supports defendant's claim on appeal, he is not entitled to any relief.

Affirmed.

/s/ Colleen A. O'Brien
/s/ Kathleen Jansen
/s/ Cynthia Diane Stephens